IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF KAIRA H.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF KAIRA H., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
GRAIG F., APPELLANT.

Filed April 9, 2013.    No. A-12-375.

Appeal from the Separate Juvenile Court of Douglas County: VERNON DANIELS, Judge. Affirmed.

Brian J. Muench for appellant.

Donald W. Kleine, Douglas County Attorney, and Jennifer Clark for appellee.

IRWIN, MOORE, and PIRTLE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Craig F. appeals from the order of the juvenile court which terminated his parental rights to his daughter, Kaira H. On appeal, Craig challenges the juvenile court's findings that termination of his parental rights is warranted pursuant to Neb. Rev. Stat. § 43-292(6) (Cum. Supp. 2012) and that termination is in Kaira's best interests.

Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Craig's parental rights. Accordingly, we affirm the order of the juvenile court which terminated Craig's parental rights to Kaira.

## II. BACKGROUND

These juvenile court proceedings involve Kaira, born in January 2009. Craig is Kaira's biological father. Kaira's biological mother, Jessica H., is not a party to this appeal, and, as such,

her involvement in the juvenile court proceedings will be discussed only to the extent necessary to provide contextual background.

From the time of Kaira's birth in January 2009 through April 2009, Kaira resided with Jessica. It is not entirely clear from our record whether Craig had any contact with Kaira during this period of time or whether Craig and Jessica were still involved in a relationship after Kaira's birth.

In April 2009, 3 months after Kaira's birth, she was removed from Jessica's care after Jessica was arrested and jailed. Kaira was placed in the immediate custody of the Department of Health and Human Services (the Department). As a result of the removal, the State filed a petition with the juvenile court, alleging that Kaira was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) due to the faults or habits of both Jessica and Craig. Specifically, the petition alleged that Craig was Kaira's biological father; that he had failed to provide Kaira with safe, stable, and appropriate housing; and that such failure placed Kaira at risk for harm.

In July 2009, the State dismissed the portion of the petition which related to Craig, apparently because Craig had indicated to the State that he was not sure if he was, in fact, Kaira's biological father. Despite Craig's concerns about paternity, he continued to attend the juvenile court proceedings and indicated to the court that he wanted to be appointed an attorney so that he could become involved in the case.

In July 2010, more than 1 year after the juvenile court proceedings began, Craig submitted to a paternity test. The test confirmed that Craig was Kaira's biological father.

In September 2010, the State filed a supplemental petition alleging that Kaira was a child within the meaning of § 43-247(3)(a) as to Craig. At the time of the State's filing, Craig was incarcerated for domestic violence, and the petition alleged that as a result of his incarceration, Craig was unable to provide housing and financial support for Kaira. The petition also alleged that Craig had waited 16 months to establish he was Kaira's biological father even though he knew Kaira was in the custody of the Department and residing in an out-of-home placement.

At a hearing in October 2010, Craig admitted to the allegations in the supplemental petition and Kaira was adjudicated to be a child within the meaning of § 43-247(3)(a). Craig remained incarcerated at the time of the adjudication hearing. In fact, Craig remained incarcerated through January 2011.

After the adjudication hearing, the juvenile court ordered Craig to obtain and maintain appropriate housing and an income source and to complete a pretreatment assessment. Craig was also provided with the opportunity to participate in supervised visitation with Kaira upon his release from incarceration.

Craig completed the pretreatment assessment and participated in an initial diagnostic interview. The results of these mental status examinations revealed that Craig had some features of antisocial personality disorder and adjustment disorder. The mental health professionals who conducted the examinations recommended that Craig participate in individual therapy and a parenting and domestic violence class. There is no indication that Craig attempted to complete any of these recommendations. The Department offered Craig the opportunity to work with a family support worker to improve his parenting skills and to assist him in finding appropriate

housing and employment. However, Craig canceled each of his scheduled meetings with the worker.

In February 2011, Craig began having fully supervised visits with Kaira. The visits occurred every Wednesday afternoon in a neutral location. Craig attended 14 visits and parented appropriately during those visits. Craig's last visit with Kaira was in July 2011. At that time, Craig was incarcerated on charges of assault and possessing a weapon. He remained incarcerated for the duration of the juvenile court proceedings.

On March 3, 2011, the State filed a motion to terminate Craig's parental rights to Kaira. In the motion, the State alleged that termination of Craig's parental rights was warranted pursuant to § 43-292(2), because he had substantially and continuously or repeatedly neglected and refused to give Kaira necessary parental care and protection; § 43-292(6), because reasonable efforts to preserve and reunify the family failed to correct the conditions that led to the determination that Kaira was within the meaning of § 43-247(3)(a); and § 43-292(7), because Kaira had been in an out-of-home placement for 15 or more months of the most recent 22 months. In addition, the State alleged that termination of Craig's parental rights was in Kaira's best interests.

In December 2011, a hearing was held on the State's motion for termination of parental rights. We have reviewed the evidence presented at the termination hearing in its entirety. However, we do not set forth the specifics of the testimony and exhibits here, other than to note that a majority of the evidence presented at the termination hearing revealed that during the almost 3 years this case was pending in juvenile court, Craig did not make any progress toward achieving reunification with Kaira. We will set forth more specific facts as presented at the hearing as necessary in our analysis below.

After the termination hearing, the juvenile court entered a detailed order finding that the State proved by clear and convincing evidence that grounds for termination of Craig's parental rights existed under § 43-292(2), (6), and (7). The court also found that it would be in Kaira's best interests to terminate Craig's parental rights. The court then entered an order terminating Craig's parental rights to Kaira.

Craig appeals from the juvenile court's order.

### III. ASSIGNMENTS OF ERROR

On appeal, Craig alleges, restated and consolidated, that the juvenile court erred in finding that termination of his parental rights is warranted pursuant to § 43-292(6) and that termination is in Kaira's best interests.

### IV. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that termination is in

the child's best interests. See *In re Interest of Jagger L., supra*. The State must prove these facts by clear and convincing evidence. *Id*. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *Id.*

## V. ANALYSIS

### 1. STATUTORY FACTORS

In its order terminating Craig's parental rights, the juvenile court found that termination was warranted pursuant to § 43-292(2), (6), and (7). On appeal, Craig argues that the juvenile court erred in finding that termination of his parental rights is warranted pursuant to § 43-292(6) because the Department failed to make reasonable efforts to assist him in obtaining reunification with Kaira and because no reasonable rehabilitation plan was put into effect.

Upon our de novo review of the record, we find that Craig's assertions regarding the statutory basis for termination of his parental rights have no merit. First, we note that on appeal, Craig concentrates his discussion on whether reasonable efforts were made to facilitate his reunification with Kaira. Such an argument relates only to the juvenile court's findings as to § 43-292(6) and not to its findings as to § 43-292(2) or (7). See *In re Interest of Chance J.*, 279 Neb. 81, 92, 776 N.W.2d 519, 528 (2009) ("reasonable efforts to reunify the family are required under the juvenile code *only* when termination is sought under § 43-292(6), not when termination is based on other grounds"). Accordingly, we understand Craig's arguments to relate only to the juvenile court's finding regarding § 43-292(6) and not to the court's finding that termination of his parental rights was also warranted pursuant to § 43-292(2) and (7).

As such, Craig does not challenge the court's finding that he had substantially and continuously or repeatedly neglected and refused to give Kaira necessary parental care and protection pursuant to § 43-292(2) or that Kaira had been in an out-of-home placement for 15 or more months of the most recent 22 months pursuant to § 43-292(7). As we explained above, a juvenile court need only find that one of the statutory subsections in § 43-292 have been satisfied in order to terminate a parent's parental rights. See *In re Interest of Jagger L.*, *supra*. Because Craig does not assign error to the juvenile court's findings regarding § 43-292(2) or (7), there is a sufficient statutory basis for termination of Craig's parental rights pursuant to these subsections.

Moreover, we conclude that the court did not err in finding that termination was also warranted pursuant to § 43-292(6). We find that contrary to Craig's assertions on appeal, there was evidence presented at the termination hearing which demonstrated that the Department did make reasonable efforts toward reunifying Craig with Kaira and that there was a reunification plan in place. The evidence also revealed that Craig's repeated incarcerations and unwillingness to participate in services during the juvenile court proceedings hindered the Department's and the juvenile court's efforts to assist him.

Upon Craig's release from incarceration in January 2011 through the time of his subsequent incarceration in August 2011, the Department offered Craig numerous services. The Department caseworker assigned to the case met with Craig on at least a monthly basis in order to assess how Craig was doing and whether he needed anything from the Department. The caseworker testified at the termination hearing that Craig only ever asked for bus passes and continued visitation with Kaira. The Department offered Craig an opportunity to participate in

drug and alcohol testing. Craig declined this service. The Department assigned a family support worker to Craig in order to assist him with securing appropriate housing and employment and to work on his parenting skills. Craig never attended a scheduled appointment with the family support worker. The Department established a regular visitation schedule for Craig and Kaira. Craig attended weekly visitation sessions with Kaira for approximately 4 months, but the visits had to be discontinued as a result of Craig's subsequent incarceration.

Given the limited time Craig was available to participate in services and given the Department's efforts during this time, we conclude that there was sufficient evidence presented to demonstrate that the Department made reasonable efforts to reunify Craig and Kaira. This evidence also revealed that despite these efforts, Craig failed to correct the conditions that led to the determination that Kaira was a child within the meaning of § 43-247(3)(a), pursuant to § 43-292(6).

Upon our review, we conclude that there was a sufficient statutory basis to warrant termination of Craig's parental rights pursuant to § 43-292(2), (6), and (7).

2. BEST INTERESTS

Craig also alleges that the juvenile court erred in finding that termination of his parental rights is in Kaira's best interests. However, Craig's assertions concerning the court's finding regarding best interests mirror his assertions concerning the court's finding regarding whether termination was warranted pursuant to § 43-292(6). He essentially argues that he was not provided an adequate opportunity to reunite with Kaira because the Department and the juvenile court failed to make reasonable efforts to help him achieve such reunification. Craig's assertions have no merit.

As we discussed above, there was sufficient evidence presented at the termination hearing to establish that the Department and the juvenile court provided Craig with reasonable efforts to achieve reunification, but that Craig failed to take advantage of those efforts.

We first note that at the beginning of the juvenile court proceedings, Craig denied that he was Kaira's biological father. Despite this denial, Craig continued to attend the juvenile court hearings and indicated an interest in becoming involved in the case; however, he did not submit to a paternity test until July 2010, more than 1 year after the proceedings were initiated. And although Craig argues in his appellate brief it is the State's fault there was such a delay in obtaining the paternity testing, the record clearly shows that the Department made multiple efforts to obtain the paternity testing, but that Craig was not cooperative with those efforts. Because Craig delayed taking the paternity test for approximately 16 months, he also delayed his participation with a rehabilitation plan. The Department was not able to provide reasonable efforts or to arrange visitation with Kaira until such time as the paternity testing demonstrated that Craig was Kaira's biological father.

Once the paternity test results were obtained, the Department offered Craig services in order to assist him in improving his parenting skills and providing a safe and stable environment for Kaira. Unfortunately, these efforts were again delayed because Craig was incarcerated for a domestic violence charge. As such, he could not participate in any services until approximately February 2011; almost 2 years after the juvenile court proceedings began. At this time, the Department offered Craig an opportunity to participate in drug and alcohol testing. Craig

declined this service. The Department assigned a family support worker to Craig in order to assist him with securing appropriate housing and employment and to work on his parenting skills. Craig never attended a scheduled appointment with the family support worker. Craig also did not follow up with any of the recommendations made by the mental health professionals who conducted a pretreatment assessment and an initial diagnostic interview. The Department caseworker assigned to Kaira's case indicated that she met with Craig once a month and that the only service he requested was help with transportation. The Department provided him bus passes to accommodate this request.

Craig did participate in supervised visitation with Kaira once a week for approximately 4 months. However, Craig's visits were discontinued because he was once again incarcerated. The visitation workers who facilitated Craig's visitations indicated that he parented appropriately, but there was very little evidence that Kaira had a strong bond with Craig.

Taken as a whole, the evidence presented at the termination hearing revealed that despite the Department's and the juvenile court's efforts to work with Craig, he continually and consistently resisted and failed to cooperate with those efforts. As a result of his resistance and his lack of cooperation, he was no closer to achieving any sort of reunification with Kaira at the time of the termination hearing than he was when these proceedings were initiated almost 3 years earlier. He demonstrated that he was unable to provide any sort of stability for Kaira. Such evidence is best highlighted by Craig's repeated incarcerations during the juvenile court proceedings. He was incarcerated at the time of the adjudication hearing and again at the time of the termination hearing. There was no evidence to suggest that he would be released from incarceration in the near future.

Furthermore, there was no evidence to demonstrate that Kaira had a bond with Craig. She was approximately 3 years old at the time of the termination hearing, and she had been living in an out-of-home placement since she was 3 months old. During this time, she had only seen Craig on a handful of occasions. Kaira needs permanency, and Craig has not shown himself capable of providing that permanency. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997).

Upon our de novo review of the record, we find that the State presented sufficient evidence, through the testimony of the caseworkers, the visitation workers, and the mental health professionals who met with Craig, to demonstrate that termination of Craig's parental rights is in Kaira's best interests. Accordingly, we affirm the order of the juvenile court terminating Craig's parental rights to Kaira.

## VI. CONCLUSION

We find that the State presented sufficient evidence to warrant termination of Craig's parental rights to Kaira. As such, we affirm the order of the juvenile court terminating his parental rights to Kaira.

AFFIRMED.