IN RE INTEREST OF JAGGER L., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. JUSTIN C., APPELLANT.

708 N.W.2d 802

Filed January 13, 2006.   No. S-05-153.

Norman Langemach for appellant.

Lori Maret, Deputy Lancaster County Attorney, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
Justin C. appeals from an order of the separate juvenile court of Lancaster County adjudicating his son, Jagger L., as a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2002) and terminating his parental rights as to Jagger pursuant to Neb. Rev. Stat. § 43-292 (Reissue 2004), subsections (1) (abandonment), (2) (neglect), and (7) (out-of-home placement). On appeal, Justin asserts, in summary, that there was insufficient

evidence to adjudicate Jagger and to terminate Justin's parental rights and that the evidence failed to prove termination was in the best interests of Jagger. Finding no merit to these assigned errors, we affirm.

## STATEMENT OF FACTS

Sonya L. and Justin are the natural parents of Jagger. Jagger was born October 31, 2001. The proceedings in this case began on October 1, 2002, when a supplemental petition was filed in the juvenile court concerning Jagger, alleging that he was a child within the meaning of § 43-247(3)(a) by reason of the fault and habits of Sonya. On that same date, the juvenile court entered an order for temporary custody, removing Jagger from Sonya's custody and placing him in the custody of the Nebraska Department of Health and Human Services (DHHS). Jagger was placed in foster care on October 1, and he has remained in foster care during the entirety of these proceedings. Sonya's parental rights to Jagger were terminated by the juvenile court on March 31, 2005. The order terminating Sonya's parental rights to Jagger was affirmed by this court in *In re Interest of Phoenix L., post* p. 870, 708 N.W.2d 786 (2005). Sonya is not part of this present appeal.

Justin is a noncustodial parent. At all times during the pendency of these proceedings, Justin has been a resident of the State of Florida. On October 22, 2002, Justin was served with a copy of the supplemental petition. On May 15, 2003, Justin moved to have counsel appointed to represent him in the pending juvenile court proceedings. The motion was granted on May 16. On May 3, 2004, a second supplemental petition and motion to terminate parental rights was filed with the juvenile court alleging that Jagger lacked proper parental care by reason of the fault or habits of Justin, and further alleging that Justin's parental rights to Jagger should be terminated pursuant to § 43-292(1), (2), and (7), because Justin had abandoned Jagger 6 or more months immediately prior to the filing of the petition, Justin had substantially and continuously or repeatedly neglected and refused to give Jagger necessary parental care and protection, and Jagger had been in out-of-home placement for 15 or more of the most recent 22 months.

On December 28, 2004, an evidentiary hearing was held on the second supplemental petition. Four witnesses, including Justin, testified, and a total of 26 exhibits was admitted into evidence. Diana Meadors, a protection and safety worker with DHHS, testified on behalf of the State. She testified that she had been assigned to the case since Jagger was removed from Sonya's home. She further testified that on November 18, 2002, pursuant to DHHS' request, a home study was conducted on Justin's residence in Florida to determine whether it might be appropriate to place Jagger with Justin. A copy of the home study report was admitted into evidence. The report listed several "concerns" and did not recommend placement of Jagger with Justin. Among the concerns noted by the home study was the fact that Justin was "a Florida registered sexual predator currently on probation." A second concern noted in the report was that Justin's home, described as a "shell of a mobile home," lacked plumbing, running water, and electricity. A third concern noted was Justin's "lack of stability" in "domestic relationships." For these reasons, the Florida home study recommended against placing Jagger with Justin and Jagger was not placed in Justin's custody. Meadors testified that based upon the home study, Justin was unable to provide a stable or secure home for Jagger. Meadors also testified that from October 2002 to May 2004, when she left employment with DHHS, she was not aware of Justin's having any face-to-face contact with Jagger. Meadors opined during her testimony that it would be in Jagger's best interests for Justin's parental rights to be terminated because of the length of time that Jagger had been in out-of-home placement. She stated that Jagger was "attached and bonded to [his foster] family [and that] I would just suggest [the juvenile court proceedings] go to termination and [Jagger] be able to live a happy, healthy life where he's been for the last two years or 18 months."

Kathryn Rogers, another DHHS protection and safety worker, also testified on behalf of the State. She stated that she had been Jagger's caseworker since September 14, 2004, and that she had reviewed Jagger's case file prior to the hearing. She testified that Jagger was, at the time of the hearing, approximately 38 months old and that he had been in out-of-home placement since he was

11 months old. She further testified that it would be in Jagger's best interests for Justin's parental rights to be terminated, "so that [Jagger] can be adopted and have permanency with [his foster family]." She testified that maintaining the status quo in foster care would be detrimental to Jagger, because "[i]t's not permanency for him."

As noted above, Justin appeared and testified as a witness in his own behalf. He testified that he was living in Florida at the time Jagger was born and that Sonya had called him on October 31, 2001, to advise him of Jagger's birth. He further testified that prior to and after Jagger's birth, he had sent money to Sonya to assist with Jagger's needs, and records introduced into evidence indicated that during the 32-month time period from November 2001 to June 2004, Justin had sent approximately $3,600 to Sonya. He also testified that he was aware of Jagger's placement in foster care at least "two or three days after he was taken" from Sonya's custody. During cross-examination, Justin admitted that he had not had any face-to-face visits with Jagger from approximately March 2002 until approximately September 2004, when he began having monthly visits with Jagger. He stated that while Jagger was in foster care, he had never sent any gifts or cards to Jagger. Justin further acknowledged that he had not provided health insurance for Jagger, despite the availability of that insurance while Justin was in the U.S. Navy. He testified that he had received an "[o]ther than honorable" discharge from the Navy in September 2002.

Justin, who at the time of the hearing was 30 years of age, also testified that he had had sexual relations with a 14-year-old girl in July 2001 and that as a result, he was placed on probation by the State of Florida in July 2002. A copy of the probation order was entered into evidence, and it provided, inter alia, that Justin had entered a no contest plea to the offense of "Lewd or Lascivious Battery – Child Under 16" and had been placed on probation for a period of 5 years.

In an order filed January 3, 2005, the juvenile court found by a preponderance of the evidence that pursuant to § 43-247(3)(a), Jagger lacked proper parental care by reason of the fault or habits of Justin, in that Justin had been aware since October 22, 2002, of the juvenile court proceedings involving Jagger, but that

Justin had "failed to put himself in a position to safely assume the parental care, support, or protection of Jagger." The juvenile court found that the allegations of the motion to terminate parental rights pursuant to § 42-292(1), (2), and (7) were shown by clear and convincing evidence and that the motion should be granted. Specifically, the juvenile court found that Justin had "abandoned Jagger . . . for six months or more immediately prior to the filing of" the second supplemental petition, that Justin had "substantially and continuously or repeatedly neglected and refused to give Jagger . . . necessary parental care and protection," and that Jagger had "been in an out-of-home placement for fifteen or months [sic] of the most recent twenty-two months." The juvenile court further found that termination of Justin's parental rights to Jagger was in Jagger's best interests. Justin appealed from this order.

## ASSIGNMENTS OF ERROR

On appeal, Justin has assigned five errors that can be restated as three errors. Justin claims, restated, that the juvenile court erred in finding (1) that as to the adjudication, the allegations made pursuant to § 43-247(3)(a) were proved by a preponderance of the evidence; (2) that as to the termination, there was clear and convincing evidence to terminate his parental rights under § 43-292(1), (2), and (7); and (3) that the termination of Justin's parental rights was in the best interests of Jagger.

## STANDARDS OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Heather R. et al.*, 269 Neb. 653, 694 N.W.2d 659 (2005). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

On appeal, Justin first asserts that the juvenile court erred in finding that Jagger was a juvenile within the meaning of § 43-247(3)(a). Following our de novo review of the record, we conclude that the juvenile court did not err in finding that the

State had proved by a preponderance of the evidence that Jagger lacked proper parental care by reason of the fault or habits of Justin for purposes of § 43-247(3)(a). Accordingly, we affirm the adjudication portion of the juvenile court's order.

In the second supplemental petition filed on May 3, 2004, the State alleged that Jagger came within the meaning of § 43-247(3)(a) because Justin had been aware of the juvenile court proceedings involving Jagger since October 22, 2002, but had failed to put himself in a position to safely assume the parental care, support, or protection of Jagger.

Section 43-247 provides:

> The juvenile court in each county as herein provided shall have jurisdiction of:
>
> . . . .
>
> (3) Any juvenile (a) . . . who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile . . . .

The evidence adduced at the hearing indicated that notwithstanding the fact that Justin was aware since October 2002 that Jagger had been removed from Sonya's custody and was in foster care, prior to these juvenile proceedings Justin had not had any face-to-face contact with Jagger since approximately March 2002. The record further reflects that Justin was unable to provide a safe and secure home for Jagger. In this regard, the home study indicated that Justin lived in a "shell of a mobile home" and that the mobile home lacked plumbing, running water, and electricity. The evidence further shows that, notwithstanding the availability of health insurance for Jagger, Justin had failed to provide health insurance for him. Finally, we note that the record shows the troubling fact that Justin was on probation for the offense of "Lewd or Lascivious Battery – Child Under 16." Although we recognize that Justin testified that since Jagger's birth, he had provided an average of approximately $100 a month for his son's care, such contribution does not preclude a finding that Jagger lacked proper care under § 43-247(3)(a). We

conclude, based on our de novo review, that the preponderance of the evidence indicates that Jagger is a juvenile within the meaning of § 43-247(3)(a). Accordingly, we conclude that the portion of the juvenile court's order that adjudicated Jagger to be a child within the meaning of § 43-247(3)(a) should be affirmed and that the assignment of error challenging this ruling is without merit.

Justin also claims on appeal that the evidence was insufficient to terminate Justin's parental rights. In this case, the juvenile court found that three statutory grounds for termination had been proved, § 43-292(1), (2), and (7). Because we determine that the evidence clearly and convincingly demonstrates that Jagger was in an out-of-home placement for at least 15 of the most recent 22 months, we affirm the juvenile court's order under § 43-292(7) and need not, and do not, further specifically address the sufficiency of the evidence under § 43-292(1) and (2).

For a juvenile court to terminate parental rights under § 43-292, it must find that termination is in the child's best interests and that one or more of the statutory grounds listed in this section have been satisfied. *In re Interest of Shelby L., ante* p. 150, 699 N.W.2d 392 (2005). The State must prove these facts by clear and convincing evidence. *Id.* Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. See *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002).

Section 43-292(7) provides for termination of parental rights when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." Thus, in order to terminate parental rights under § 43-292(7), the State must prove by clear and convincing evidence that the child has been in out-of-home placement for 15 or more of the most recent 22 months and that termination of parental rights is in the best interests of the child. See *In re*

*Interest of Aaron D., supra.* Along with proof of best interests, § 43-292(7) is satisfied if the evidence shows the requisite number of months of out-of-home placement and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Aaron D., supra.*

In the present case, there is no dispute that Jagger has been in an out-of-home placement continuously since October 2002, which was more than 19 months at the time the motion to terminate was filed, and which was more than 27 months at the time of the juvenile court's termination order in this case was entered. Thus, there is clear and convincing evidence that Jagger had been in out-of-home placement for 15 of the most recent 22 months pursuant to § 43-292(7). Accordingly, the assignment of error challenging the basis for termination under § 43-292(7) is without merit.

Justin also contends that the State did not prove by clear and convincing evidence that termination of his parental rights was in Jagger's best interests. The evidence in this case establishes that at the time the termination hearing occurred, Jagger had been in out-of-home placement for more than 70 percent of his life. Justin knew Jagger was in out-of-home placement since October 2002 but had no face-to-face contact with him until September 2004, 4 months after the motion to terminate parental rights was filed and 24 months after Jagger was placed in foster care. There was evidence that adoption and permanency with his foster family with whom he had bonded would provide Jagger with a happy and healthy life. Given these circumstances and the entire record in this case, which we have reviewed de novo, we conclude that there exists clear and convincing evidence that terminating Justin's parental rights is in Jagger's best interests. This assigned error is without merit.

## CONCLUSION

We conclude that the juvenile court's order adjudicating Jagger to be a child within the meaning of § 43-247(3)(a) was supported by a preponderance of the evidence, and such order is affirmed. We further conclude that there was clear and convincing evidence to support a finding that Justin's parental rights

should be terminated pursuant to § 43-292(7) and that termination is in the best interests of Jagger. Since termination was proper under § 43-292(7), we do not consider the propriety of terminating Justin's parental rights pursuant to § 43-292(1) and (2). The judgment of the juvenile court terminating Justin's parental rights to Jagger is affirmed.

AFFIRMED.