IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF ADLAI S.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ADLAI S., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
KELLY W., APPELLANT.

Filed April 9, 2013.    No. A-12-762.

Appeal from the Separate Juvenile Court of Douglas County: CHRISTOPHER KELLY, Judge. Affirmed.

Joseph Kuehl for appellant.

Donald W. Kleine, Douglas County Attorney, Erin Hurley, and Emily H. Anderson, Senior Certified Law Student, for appellee.

INBODY, Chief Judge, and IRWIN, and MOORE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Kelly W. appeals from the order of the juvenile court which terminated his parental rights to his son, Adlai S. On appeal, Kelly challenges the juvenile court's finding that termination of his parental rights is in Adlai's best interests. Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Kelly's parental rights. As such, we affirm the order of the juvenile court terminating Kelly's parental rights to Adlai.

## II. BACKGROUND

These juvenile court proceedings involve Adlai, born in July 2007. Kelly is Adlai's biological father. Adlai's biological mother, Misti S., is not a party to this appeal, and, as such,

- 1 -

her involvement in the juvenile court proceedings will be discussed only to the extent necessary to provide contextual background.

In June 2007, Kelly was arrested on charges of robbery and use of a weapon to commit a felony. He was ultimately convicted of the charges, and as a result of his convictions, Kelly has remained incarcerated since his arrest in 2007.

In July 2007, a few weeks after Kelly's arrest and incarceration, Adlai was born. From the time of Adlai's birth through June 2010, Adlai resided with his mother, Misti. Misti took Adlai to visit Kelly at the prison on two occasions.

In June 2010, when Adlai was approximately 3 years old, he was removed from Misti's care due to Misti's use of illegal substances and her failure to take care of her health. Adlai was placed in the immediate custody of the Department of Health and Human Services (the Department). As a result of the removal, the State filed a petition with the juvenile court, alleging that Adlai was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) due to the faults or habits of Kelly. Specifically, the petition alleged that Kelly was incarcerated, that he had failed to provide Adlai with safe and stable housing and with proper parental care and support, and that such failure placed Adlai at risk for harm.

At a hearing in November 2010, Kelly admitted to the allegations in the petition which alleged that he was incarcerated and that he had failed to provide Adlai with proper parental care and support. As a result of Kelly's admissions, Adlai was adjudicated to be a child within the meaning of § 43-247(3)(a).

After the adjudication hearing, the juvenile court ordered Kelly to participate in a rehabilitation plan. As a part of that plan, Kelly was ordered to follow the rules of the prison, complete a parenting class, undergo a psychological evaluation, obtain safe and stable housing for Adlai upon his release from incarceration, and participate in supervised telephone calls with Adlai one time per month. Kelly's incarceration hindered his ability to comply with many of the court's orders. Indeed, as a result of Kelly's behavior while incarcerated, his compliance with the court's orders was made very difficult. Kelly was placed on "administrative confinement" for almost the entire duration of the juvenile court proceedings because he was found to be in possession of a weapon. Kelly's status on "administrative confinement" meant that he had very few privileges at the prison.

Kelly was able to participate in telephone calls with Adlai beginning in January 2011. He regularly telephoned to speak with Adlai and Adlai's foster parents. However, due to Adlai's young age, Kelly often did not speak with him for any meaningful length of time.

After the juvenile court proceedings had been pending for almost 2 years, the State filed a motion to terminate Kelly's parental rights. In the motion, the State alleged that termination of Kelly's parental rights was warranted pursuant to Neb. Rev. Stat. § 43-292(2) (Cum. Supp. 2012), because he had substantially and continuously or repeatedly neglected and refused to give Adlai necessary parental care and protection, and § 43-292(7), because Adlai had been in an out-of-home placement for 15 or more months of the most recent 22 months. In addition, the State alleged that termination of Kelly's parental rights was in Adlai's best interests.

In July 2012, a hearing was held on the State's motion for termination of parental rights. At the hearing, the State presented evidence to demonstrate that, as a result of his lengthy incarceration, Kelly has been unable to make any significant progress toward obtaining custody

of Adlai. In addition, Kelly has been unable to have a meaningful relationship with Adlai because he has been incarcerated since prior to Adlai's birth. Kelly's contact with Adlai has consisted of two in-person visits when Adlai was very young and monthly telephone calls since January 2011. While Adlai refers to Kelly as "dad" during these telephone calls, Adlai often is uninterested in talking to Kelly on the telephone and, when he does talk, Adlai talks to Kelly as if Kelly were his "buddy." The two caseworkers involved in the juvenile court proceedings testified that it would be in Adlai's best interests to terminate Kelly's parental rights due to the lack of relationship between Adlai and Kelly, the length of time Adlai has been in foster care, and Kelly's inability to provide care and support for Adlai.

Kelly also testified at the hearing. He testified that, although he was still incarcerated at the time of the termination hearing, he had recently been granted parole and would be released from prison as soon as he obtained suitable housing. He believed that he could be released any day. Kelly admitted that he may have been granted parole at an earlier date, but he had been caught with a weapon, had been placed on "administrative confinement," and had lost "good time." Kelly testified that while he was incarcerated, he did complete a parenting class and an alternative violence program. In addition, he attended a nonresidential treatment program for drug and alcohol abuse. Kelly testified that he telephones Adlai whenever he is able. He believes that he has a good relationship with Adlai and wants Adlai to come live with him upon his release.

After the termination hearing concluded, the juvenile court entered an order finding that the State proved by clear and convincing evidence that grounds for termination of Kelly's parental rights existed under § 43-292(2) and (7). The court also found that it would be in Adlai's best interests to terminate Kelly's parental rights. The court then entered an order terminating Kelly's parental rights to Adlai.

Kelly appeals from the juvenile court's order.

### III. ASSIGNMENT OF ERROR

On appeal, Kelly alleges that the juvenile court erred in finding that termination of his parental rights is in Adlai's best interests.

### IV. ANALYSIS

#### 1. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests. See *In re Interest of Jagger L., supra*. The State must prove these facts by clear and convincing evidence. *Id*. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *Id*.

## 2. STATUTORY FACTORS

In its order terminating Kelly's parental rights, the juvenile court found that termination was warranted pursuant to § 43-292(2) and (7). On appeal, Kelly does not challenge the court's determination that the statutory criteria for termination were satisfied. Specifically, Kelly does not challenge the juvenile court's finding that he had substantially and continuously or repeatedly neglected and refused to give Adlai necessary parental care and protection pursuant to § 43-292(2) or that Adlai had been in an out-of-home placement for 15 or more months of the most recent 22 months pursuant to § 43-292(7).

## 3. BEST INTERESTS

Kelly focuses his appeal on the juvenile court's finding that termination of his parental rights is in Adlai's best interests. Specifically, Kelly alleges that the juvenile court failed to consider all of the efforts he made to maintain a relationship with Adlai and, instead, considered only Kelly's incarceration as the basis for its decision to terminate his parental rights. Upon our de novo review of the record, we find sufficient evidence to warrant termination of Kelly's parental rights. As such, we affirm the order of the juvenile court.

At the time of the termination hearing, Kelly was incarcerated. In fact, Kelly had been incarcerated since the commencement of the juvenile court proceedings in June 2010 and since prior to Adlai's birth in July 2007. And, while Kelly testified that he had recently been granted parole and could be released "any day," the evidence revealed that Kelly had not yet secured suitable housing and would not be released until he had done so. As such, Kelly's impending release date was not certain. In addition, we must note that Kelly's release from prison was delayed by his poor behavior while incarcerated. Kelly had been found in possession of a weapon, which not only delayed his parole date, but also required him to serve much of his sentence in "administrative confinement."

We recognize the longstanding rule that a parent's incarceration, standing alone, does not provide grounds for termination of parental rights. See *In re Interest of Leland B.*, 19 Neb. App. 17, 797 N.W.2d 282 (2011). However, in this case, Kelly's incarceration is but one factor to consider in determining whether termination of his parental rights is warranted. And, a parent's incarceration may be considered along with other factors in determining whether parental rights can be terminated. *Id*. Here, we must consider, in addition to Kelly's incarceration, Kelly's lack of progress toward obtaining custody of Adlai, the uncertainty of Kelly's circumstances upon his release from prison, and his lack of relationship with Adlai.

During the approximately 2 years this case was pending in the juvenile court, Kelly was not able to make any progress toward obtaining custody of Adlai. Kelly was unable to comply with many of the court's orders as a result of his incarceration. And, while he testified that he completed a parenting class and a substance abuse treatment program, he was unable to demonstrate the skills he acquired in these programs outside the confines of the prison.

Kelly has been incarcerated for approximately 5 years. He has not been able to show that he is capable of maintaining a stable lifestyle outside of the prison walls. Indeed, during his incarceration, Kelly failed to demonstrate that he could stay out of trouble while inside the prison walls. He violated prison rules which delayed his release date and prevented him from participating in many of the prison's programs.

At the time of the termination hearing, Kelly had not secured safe and stable housing or employment for his pending release. Due to Kelly's struggle to obtain housing, it is not clear if any housing he could obtain would be appropriate for a young child or whether Kelly would even be permitted to have Adlai live with him immediately after his release. In addition, Kelly indicated that he had not secured any employment and that he would begin looking for a job upon his release. As such, it is not clear when Kelly will be able to financially provide for Adlai.

Kelly has never parented Adlai. He has never even had any real visitation with Adlai. Because of Kelly's lack of interaction with Adlai, it is impossible to assess his parenting abilities and whether he is capable of being an appropriate parent.

Because Kelly has never parented Adlai or been around him for any length of time, Adlai does not have a strong bond with Kelly. As we discussed above, Kelly has been incarcerated since prior to Adlai's birth. At the time of the termination hearing, Adlai was approximately 5 years old. During Adlai's life, he has seen Kelly on two occasions when Misti took him to visit Kelly at the prison. These two visits occurred prior to Adlai's third birthday when Misti still had custody of him. As such, it is probable that Adlai does not even remember the visits. Since January 2011, Adlai has received monthly telephone calls from Kelly. These telephone calls are typically brief, and because of Adlai's young age, he has not shown any real interest in talking with Kelly for more than a few minutes. While there was evidence to suggest that Adlai understands that Kelly is his "dad," a majority of the evidence demonstrates that Kelly is, for the most part, a stranger to Adlai.

It is clear from Kelly's testimony that Kelly loves Adlai and wants to be a parent to him. However, it is also clear that Kelly is simply not ready to be a parent and that even after he is released from prison, he may not be ready to parent Adlai for some time. Adlai has been out of Kelly's home for his entire life and has been in foster care for more than 2 years. He deserves a permanent and stable home environment, which Kelly is currently not able to provide. When a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time, the child's best interests require termination of parental rights. *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008). Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id.*

Upon our de novo review of all of the evidence presented at the termination hearing, we conclude that the termination of Kelly's parental rights is in Adlai's best interests. As such, we affirm the order of the juvenile court terminating Kelly's parental rights to Adlai.

## V. CONCLUSION

Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Kelly's parental rights to Adlai. As such, we affirm the order of the juvenile court terminating Kelly's parental rights to Adlai.

AFFIRMED.