IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF HAYDEN S. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF HAYDEN S. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
LATOSHA S., APPELLANT.

Filed September 17, 2013.    No. A-13-143.

Appeal from the Separate Juvenile Court of Douglas County: ELIZABETH CRNKOVICH, Judge. Affirmed.

Mary Pat Coe for appellant.

Donald W. Kleine, Douglas County Attorney, and Jennifer C. Clark for appellee.

INBODY, Chief Judge, and IRWIN and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Latosha S. appeals from the order of the juvenile court which terminated her parental rights to her five children: Hayden S., Krystopher S., Krysteena S., Mariannah S., and Fabienne S. On appeal, Latosha challenges the juvenile court's finding that her parental rights should be terminated pursuant to Neb. Rev. Stat. § 43-292(2) and (6) (Cum. Supp. 2012) and the court's finding that termination of her parental rights is in the children's best interests. Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Latosha's parental rights. As such, we affirm the order of the juvenile court terminating Latosha's parental rights to her five children.

- 1 -

## II. BACKGROUND

These proceedings involve five children: Hayden, born in October 2003; Krystopher, born in July 2006; Krysteena, born in July 2006; Mariannah, born in October 2007; and Fabienne, born in November 2009. Latosha is the biological mother of all five children. The children's biological fathers are not parties to this appeal, and thus, their participation in this case will not be discussed further.

The current juvenile court proceedings were initiated in August 2011. However, this is not the first time that Latosha and her children have been involved with the juvenile court system. Latosha's history with the juvenile court is relevant to the current proceedings because such history provides insight into her ability to independently parent her children. As a result, we briefly recount that history here.

In December 2008, Latosha's four oldest children were removed from her home after Latosha failed to follow through with voluntary services provided to her by the Department of Health and Human Services (the Department). The services provided by the Department were designed to assist Latosha in meeting her children's medical needs. After the children's removal, the Department assisted Latosha with obtaining appropriate housing, seeking employment, and learning to utilize community resources. Latosha did not demonstrate consistent cooperation with the Department's efforts, nor did she always appear motivated to achieve reunification with her children. The children remained in an out-of-home placement until August 2010.

After the children were returned to Latosha's home, she continued to be inconsistent in her cooperation and participation with the Department's efforts to assist her in parenting the children. Beginning in July 2011, the Department received multiple reports that Latosha was neglecting the children.

Ultimately, on August 20, 2011, law enforcement officers were dispatched to Latosha's home to check on the welfare of the children. The officers removed the children from Latosha's care after viewing the conditions of her home. The officers reported that there was no running water in the home, that there were no beds or food for the children, and that the home was extremely dirty. The officers also reported that Latosha told them that she had discontinued providing necessary medication to her youngest child, Fabienne, who had previously been diagnosed with sickle cell anemia.

Immediately after the children's removal from Latosha's care, the State filed a petition alleging the children were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008), because Latosha's home was in a "filthy and unwholesome condition" and, as such, Latosha had failed to provide the children with safe, stable, and appropriate housing which put the children at risk for harm. This petition is the basis for the current juvenile court proceedings.

After the petition was filed, the juvenile court entered an order placing the children in the immediate custody of the Department. The children have remained in the custody of the Department and placed outside of Latosha's home since their removal in August 2011.

On October 26, 2011, Latosha admitted to the allegations in the petition which alleged that, at the time of the children's removal, her home was in a "filthy and unwholesome condition" and that this placed her children at risk for harm. As a result of Latosha's admissions, the children were adjudicated to be within the meaning of § 43-247(3)(a).

After the children were adjudicated to be within the meaning of § 43-247(3)(a), the juvenile court held hearings in December 2011 and June 2012 to review the status of the case. At these hearings, the juvenile court ordered Latosha to participate in a rehabilitation plan designed to reunify her with her children. Specifically, the juvenile court ordered Latosha to submit to a psychiatric and a psychological evaluation; to participate in individual therapy and follow the recommendations of her mental health care providers; to participate in family support services; to investigate her eligibility for community resources; and to submit to random drug testing. In addition, Latosha was given the opportunity to have regular visitation with her children.

On August 14, 2012, the State filed a motion for termination of Latosha's parental rights to all five of her children. In the motion, the State alleged that termination was warranted pursuant to § 43-292(2), because Latosha had substantially and continuously or repeatedly neglected and refused to give her children necessary parental care and protection, and § 43-292(6), because reasonable efforts to preserve and reunify the family failed to correct the conditions that led to the determination that the children were within the meaning of § 43-247(3)(a). In addition, the State alleged that termination of Latosha's parental rights was in the children's best interests.

In January 2013, a hearing was held on the State's motion for termination of parental rights. While we have reviewed the evidence presented at the hearing in its entirety, we do not set forth the specifics of the testimony and exhibits here. Instead, we will set forth more specific facts as presented at the hearing as necessary in our analysis below. We do note that Latosha did not attend the termination hearing. The transcript of the proceedings indicates that neither the Department workers nor Latosha's attorney knew Latosha's whereabouts or how to contact her. The State did publish notice of the termination hearing in an effort to make Latosha aware of the proceedings.

After the termination hearing, the juvenile court entered an order finding that the State proved by clear and convincing evidence that grounds for termination of Latosha's parental rights existed under § 43-292(2) and (6) and that termination of her parental rights was in the children's best interests. The court then ordered that Latosha's parental rights to Hayden, Krystopher, Krysteena, Mariannah, and Fabienne be terminated.

Latosha appeals from the juvenile court's order.

## III. ASSIGNMENTS OF ERROR

On appeal, Latosha challenges the juvenile court's finding that her parental rights should be terminated pursuant to § 43-292(2) and (6) and the court's finding that termination of her parental rights is in the children's best interests.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

- 3 -

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests. See *In re Interest of Jagger L., supra*. The State must prove these facts by clear and convincing evidence. *Id*. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *Id*.

## 2. STATUTORY GROUNDS

Latosha assigns as error the juvenile court's finding that the State presented clear and convincing evidence to prove the statutory grounds for termination of her parental rights. Specifically, she challenges the juvenile court's determination that termination of her parental rights was warranted pursuant to § 43-292(2) and (6). Upon our de novo review of the record, we find that the State presented clear and convincing evidence to prove that termination was warranted pursuant to § 43-292(6). As such, we need not specifically address the juvenile court's determination as to § 43-292(2).

Section 43-292(6) provides that a court may terminate parental rights when, "[f]ollowing a determination that the juvenile is one as described in [§ 43-247(3)(a)], reasonable efforts to preserve and reunify the family . . . have failed to correct the conditions leading to the determination."

On October 26, 2011, the juvenile court adjudicated all five children to be within the meaning of § 43-247(3)(a), after Latosha admitted that her home was in a "filthy and unwholesome condition" and that her children were at risk for harm. Pursuant to Latosha's admissions, the juvenile court ordered her to participate in a rehabilitation plan which was designed to correct the conditions leading to the adjudication. Throughout the course of the juvenile court proceedings, Latosha was ordered to submit to a psychiatric and a psychological evaluation; to participate in individual therapy and follow the recommendations of her mental health care providers; to participate in family support services; to investigate her eligibility for community resources; to submit to random drug testing; and to participate in visitation with her children.

The evidence presented at the termination hearing revealed that Latosha has not consistently or completely abided by any of the court's rehabilitation orders. As a result, in the approximately 17 months between the children's adjudication and the time of the termination hearing, Latosha failed to make any significant progress toward reunification.

### (a) Mental Health Evaluations and Individual Therapy

The juvenile court ordered Latosha to address her mental health needs. Specifically, the court ordered Latosha to submit to a psychological and a psychiatric evaluation, to participate in individual therapy, and to follow any other recommendations of her mental health care providers. Latosha did submit to a psychological and a psychiatric evaluation. However, she did not attend individual therapy, nor did she follow through with any other recommendations related to her mental health. As a result, she did not address any of her mental health needs.

At the termination hearing, Gloria LaCrosse, the family's caseworker during a majority of the juvenile court proceedings, testified that she referred Latosha to a therapist who was willing to come to Latosha's home to conduct the therapeutic sessions. However, Latosha refused to cooperate with this referral and did not set up any appointments with the therapist. The therapist made several attempts to contact Latosha, but Latosha never returned her telephone calls.

Other evidence presented at the termination hearing revealed that Latosha's family partner, Deborah Faulkner, attempted to assist Latosha in setting up and attending therapy sessions. Faulkner made an appointment for Latosha, and Latosha indicated that she made arrangements with her mother to take her to the appointment, but Latosha did not attend the appointment. Subsequently, the doctor's office declined to provide Latosha any services because of her failure to attend appointments.

### (b) Family Support Services

The juvenile court ordered Latosha to participate in family support services, which were designed to assist Latosha with obtaining housing and employment, addressing her mental health issues, and improving her parenting skills. Latosha minimally participated with the family support services provided to her and consistently failed to stay in contact with her assigned family partner, Faulkner.

Almost immediately after the children were removed from Latosha's home, LaCrosse established family support services for Latosha. Two family support workers were assigned to assist Latosha. Latosha refused to work with either worker. Ultimately, a third worker, Faulkner, was assigned to work with Latosha. Faulkner was able to meet with Latosha on a few occasions, but, at the termination hearing, Faulkner testified that Latosha did not make progress toward achieving any of her identified goals and that Latosha was simply not ever interested in cooperating.

Latosha never obtained consistent, independent housing. During the juvenile court proceedings, Latosha was evicted from multiple residences for failing to pay rent and for failing to keep the homes in good condition. Latosha sometimes lived with friends or with her mother.

Latosha did not obtain employment. Latosha reported to Faulkner that she had a letter from a doctor stating that she was unable to work. However, Latosha did not ever produce this letter or verify that she was medically unable to obtain employment. Latosha at one time reported that she was working for some type of computer design business, but she did not provide verification of this employment. A further investigation of the business did not produce any verification that Latosha worked for the business or that the business even existed.

As we discussed more thoroughly above, Latosha did not make any progress toward her mental health treatment in spite of Faulkner's efforts to assist Latosha with making and keeping appointments.

Latosha did not make any significant improvements in her parenting skills because Latosha failed to consistently attend visits with her children where such skills could be addressed.

Latosha also failed to stay in contact with Faulkner. Faulkner testified that she worked very hard to maintain contact with Latosha. In fact, Faulkner indicated that she would have to

"hunt" for Latosha by driving to various residences where Latosha had previously stayed and by speaking with Latosha's friends and family. Eventually, Faulkner had to terminate her services with Latosha in July 2012 because, despite her efforts, she was unable to locate Latosha and Latosha had stopped contacting her.

### (c) Investigation of Eligibility
### for Community Resources

The juvenile court ordered Latosha to investigate her eligibility for housing and employment assistance through an organization called Community Alliance. Latosha simply refused to even contact Community Alliance.

### (d) Random Drug Testing

In June 2012, the juvenile court ordered Latosha to submit to random drug testing. Latosha did not submit to any drug tests. LaCrosse testified that she was not even able to establish any type of drug testing for Latosha because she did not know how to contact Latosha any time after June 2012.

### (e) Visitation

The juvenile court provided Latosha with the opportunity to participate in supervised visitation with her children. During the course of the juvenile court proceedings, Latosha's participation in visitation was inconsistent and sporadic.

In September 2011, very soon after the children were removed from Latosha's home, LaCrosse established a regular visitation schedule between Latosha and the children. Visitations were to be conducted through Beneficial Behavioral Health, an agency which provided workers to monitor visits between parents and their children. Initially, Latosha attended all of the visits offered to her and appropriately parented the children during these visits. She provided the children with food and activities and exhibited attention and affection toward each child.

However, by the end of October 2011, Latosha's participation in visits began to dwindle. During one visit, Latosha did not interact much with any of the children and appeared to fall asleep. Latosha then asked the visitation worker if it would be possible to decrease the duration of the visits. By November 2011, Latosha stopped attending visitation sessions. She did not stay in contact with her visitation workers, and when she did contact them, she provided various excuses for why she could not attend a visit.

In November 2011, Beneficial Behavioral Health terminated its services with Latosha because visitation workers were struggling to stay in contact with Latosha and because Latosha was not consistently attending visits. LaCrosse then engaged another visitation agency, Capstone Behavioral Health, to facilitate the visitation sessions. Latosha continued to be inconsistent in her attendance at visitation sessions. In addition, when she did attend, her behavior during visitation sessions was often inappropriate. One visit was terminated early because the visitation worker believed that Latosha was under the influence of drugs or alcohol. And, this was not the only time that a visitation worker expressed concern about Latosha being under the influence or exhibiting "odd" behaviors during visits. During another visit, Latosha had a verbal altercation

with a visitation worker and "banned" that worker from her home. Soon after this visit, Capstone Behavioral Health terminated its services with Latosha.

In March 2012, Beneficial Behavioral Health agreed to facilitate visits between Latosha and her children again. The agency established such visitation on a call-and-confirm status. As a result, Latosha had to confirm that she was going to attend a visit in advance of the visit occurring. If Latosha did not confirm, the visit would not be held. Latosha did attend a few visitation sessions between March and June 2012. However, her attendance continued to be sporadic, and although she did demonstrate love for her children, she also continued to demonstrate inappropriate behaviors during the visitation sessions she did attend. Latosha struggled to balance her time between all of her children and often gave her youngest child, Fabienne, a lot of attention while ignoring the other children.

Latosha completely stopped attending visitation sessions with her children in June 2012. She has not seen any of her children since that time.

Taken together, the evidence presented at the termination hearing revealed that Latosha had not made any progress toward reunification with her children from the time of their removal in August 2011 to the time of the termination hearing in January 2013. She did not make any genuine progress toward addressing her mental health needs because she failed to attend individual therapy. She did not cooperate with her family support worker and, as a result, did not make any progress toward obtaining and maintaining housing and employment or toward improving her parenting skills. She refused to apply for assistance from a community organization, and she did not submit to any drug tests because she would never stay in contact with the workers assigned to her case. Perhaps most significant, Latosha was not consistent in her attendance at visitation with her children. In fact, by the time of the termination hearing, Latosha had not had a visit with her children in over 6 months.

Based on our review of the record, we find that Latosha did not make significant progress toward reunification with her children despite the efforts of the Department and the juvenile court. As such, we affirm the decision of the juvenile court which determined that termination of Latosha's parental rights was warranted pursuant to § 43-292(6). Given this finding, we do not address the sufficiency of the evidence demonstrating that termination was also appropriate pursuant to § 43-292(2). Latosha's assertions regarding the sufficiency of the statutory authority to support termination of her parental rights is without merit.

### 3. CHILDREN'S BEST INTERESTS

Latosha also assigns as error the juvenile court's finding that termination of her parental rights is in the children's best interests. Specifically, Latosha argues that she has a strong bond with her children and that if her parental rights are terminated, "it would leave her children with a sense of abandonment." Brief for appellant at 19. Upon our de novo review of the record, we affirm the determination of the juvenile court that termination of Latosha's parental rights is in the children's best interests. Latosha failed to make significant progress toward reunification with her children despite the efforts of the Department and the juvenile court. Latosha continues to be unable or unwilling to provide stability for her children, and the children need and deserve permanency in their lives.

When a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time, the child's best interests require termination of parental rights. *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008). Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id.*

As we discussed more thoroughly above, Latosha has failed to make any significant progress toward reunification with her children despite the length of time the children have been out of her home. The children were removed from Latosha's care in August 2011. The termination hearing was held in January 2013. During the 17 months that the children were in an out-of-home placement, Latosha did not address her mental health needs by attending therapy, did not cooperate with the efforts of her family partner, did not obtain safe and stable housing, did not obtain employment, did not attempt to obtain any community resources, did not submit to drug testing, and did not consistently attend visitation with her children. In fact, Latosha stopped attending visitation with the children in June 2012 and, by the time of the termination hearing, had not seen her children in over 6 months. This evidence reveals that Latosha was no closer to reunification with her children in January 2013, than she was in August 2011.

Moreover, this is not the first time that Latosha and the children have been involved with the juvenile court, nor is it the first time that the children have been placed outside of Latosha's home. At the termination hearing, LaCrosse testified, "Those five children [have] been out of home more months than they've been in home over the course of the last four and a half years." LaCrosse also testified that it is in the children's best interests to "have a secure and stable home where they know they will be cared for until they reach majority."

Upon our review of the record, we agree with LaCrosse. Latosha has been provided with reasonable time to comply with the rehabilitation plan. She has shown very little, if any, willingness to comply with the court's orders or to cooperate with all of the efforts of her service providers. In addition, she has demonstrated a lack of interest in being reunited with her children. She stopped attending visitation with them in June 2012, and at this same time, she stopped having any contact with LaCrosse or any other service provider. Latosha did not even attend the termination hearing to explain why termination was not appropriate. Contrary to Latosha's assertions in her brief to this court, Latosha had effectively "abandoned" her children long before the juvenile court ordered termination of her parental rights.

The children need stability in their lives and parental figures upon whom they can depend. Latosha is simply unable to provide the stability that the children require. We affirm the juvenile court's order which found that termination of Latosha's parental rights is in the children's best interests.

## V. CONCLUSION

Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Latosha's parental rights. As such, we affirm the order of the juvenile court terminating her parental rights to Hayden, Krystopher, Krysteena, Mariannah, and Fabienne.

AFFIRMED.