IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF NATHANIEL M. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF NATHANIEL M. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
BRYLONA M., APPELLANT.

Filed February 18, 2014.    No. A-13-487.

Appeal from the Separate Juvenile Court of Douglas County: CHRISTOPHER KELLY, Judge. Affirmed.

Ryan M. Hoffman, of Anderson, Bressman & Hoffman, P.C., L.L.O., for appellant.

Donald W. Kleine, Douglas County Attorney, and Shakil A. Malik for appellee.

IRWIN, MOORE, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Brylona M. appeals from the order of the juvenile court which terminated her parental rights to her three children. On appeal, Brylona challenges the juvenile court's finding that her parental rights should be terminated pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Cum. Supp. 2012) and that termination of her parental rights is in the children's best interests. Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Brylona's parental rights. As such, we affirm the order of the juvenile court terminating Brylona's parental rights.

- 1 -

## II. BACKGROUND

These juvenile court proceedings involve three children: Nathaniel M., born in March 2005; Jaisean M., born in August 2008; and Chakara M., born in December 2009. Brylona is the biological mother of all three children.

In October and November 2011, the Department of Health and Human Services (the Department) received multiple reports that Brylona was leaving her three young children without any supervision for extended periods of time. As a result of these reports, a Department employee conducted an investigation concerning the family. Ultimately, the Department recommended that the children be removed from Brylona's care and custody. On November 18, the juvenile court entered an order, placing the children in the immediate custody of the Department, and indicated that placement of the children was not to include Brylona's home. The children have remained in the custody of the Department in an out-of-home placement since the entry of that order.

Also on November 18, 2011, the State filed a petition with the court alleging that each of the children was within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). Specifically, the petition alleged that the children were within the meaning of § 43-247(3)(a) due to Brylona's using alcohol and/or controlled substances, Brylona's leaving the children without proper supervision on multiple occasions, Brylona and her boyfriend's engaging in domestic violence in the presence of the children and subjecting the children to inappropriate discipline, Brylona's suffering from untreated mental health problems, and Brylona's failing to provide Nathaniel with necessary medication.

On December 19, 2011, an adjudication hearing was held concerning the allegations in the State's petition. At the hearing, Brylona admitted to the portions of the petition which alleged that the children were at risk for harm because she used alcohol and/or controlled substances, she engaged in domestic violence in front of the children, she suffered from untreated mental health problems, and she failed to provide the children with proper supervision. As a result of Brylona's admissions, the children were adjudicated pursuant to § 43-247(3)(a). In addition, at the adjudication hearing, the juvenile court ordered Brylona to participate in a treatment program to address her substance abuse and mental health problems.

Further hearings were held in February, March, and August 2012 and in February 2013. At these hearings, Brylona was ordered by the juvenile court to participate in a rehabilitation plan designed to assist Brylona in addressing the issues which precipitated her involvement with the juvenile court proceedings and ultimately to assist her in regaining custody of the children. As a part of this plan, the court again ordered Brylona to complete a treatment program to address her substance abuse and mental health problems and also ordered her to submit to random drug and alcohol testing; complete a parenting assessment and a parenting class; cooperate with a parenting coach; complete a psychiatric evaluation; participate in therapeutic services, which include domestic violence education; and take all prescribed medication. In addition to these orders, Brylona was ordered to participate in supervised visitation with the children.

On March 26, 2013, the State filed a motion for termination of Brylona's parental rights to Nathaniel, Jaisean, and Chakara. The State alleged that termination of her parental rights was

warranted pursuant to § 43-292(2), because she has substantially and continuously or repeatedly neglected and refused to give her children necessary parental care and protection; § 43-292(5), because she is unable to discharge her parental responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period; § 43-292(6), because reasonable efforts to preserve and reunify the family failed to correct the conditions that led to the determination that the children were within the meaning of § 43-247(3)(a); and § 43-292(7), because the children had been in an out-of-home placement for 15 or more months of the most recent 22 months. In addition, the State alleged that termination of Brylona's parental rights was in the best interests of the children.

On May 2, 2013, a hearing was held on the State's motion for termination of parental rights. While we have reviewed the evidence presented at the hearing in its entirety, we do not set forth the specifics of the testimony and exhibits here. Instead, we will set forth more specific facts as presented at the hearing as necessary in our analysis below.

After the termination hearing, the juvenile court entered an order finding that the State proved by clear and convincing evidence that grounds for termination of Brylona's parental rights existed under § 43-292(2), (6), and (7). The court indicated that there was insufficient evidence to prove that termination was also warranted under § 43-292(5), and as a result, it dismissed that allegation. The court found that it would be in the children's best interests to terminate Brylona's parental rights. The court then entered an order terminating Brylona's parental rights to Nathaniel, Jaisean, and Chakara.

Brylona appeals here.

## III. ASSIGNMENTS OF ERROR

On appeal, Brylona alleges that the juvenile court erred in finding that the State proved the relevant statutory grounds for termination of her parental rights and in finding that termination of her parental rights was in the children's best interests.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests. See *In re Interest of Jagger L., supra*. The State must prove these facts by clear and convincing evidence. *Id*. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *Id*.

## 2. STATUTORY GROUNDS

Brylona asserts that the juvenile court erred in sustaining the motion to terminate her parental rights pursuant to § 43-292(2), (6), and (7). Upon our de novo review of the record, we find that the evidence clearly and convincingly demonstrates that Nathaniel, Jaisean, and Chakara were in an out-of-home placement for at least 15 of the most recent 22 months prior to the termination hearing, pursuant to § 43-292(7). As a result, we need not specifically address whether the State presented clear and convincing evidence to demonstrate that termination was also warranted pursuant to § 43-292(2) or (6).

Termination of parental rights is warranted whenever one or more of the statutory grounds provided in § 43-292 is established. If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Jagger L., supra.*

In this case, the juvenile court found that termination of Brylona's parental rights was warranted pursuant to § 43-292(2), (6), and (7). Section 43-292(7) provides for termination of parental rights when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." See *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). This section operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Aaron D., supra.*

At the hearing on the State's motion to terminate Brylona's parental rights, there was uncontradicted evidence which demonstrated that Nathaniel, Jaisean, and Chakara were removed from Brylona's home in November 2011. They remained in an out-of-home placement for the duration of the juvenile court proceedings. As such, at the time the State filed its motion to terminate Brylona's parental rights in March 2013, the children had been in an out-of-home placement for approximately 16 months. A little more than a month passed from the time the motion was filed to the time the termination hearing began in May 2013. As such, by the time the termination hearing began, the children had been in an out-of-home placement for 17 months. Accordingly, there is no dispute that Nathaniel, Jaisean, and Chakara were in an out-of-home placement for 15 or more months of the most recent 22 months as § 43-292(7) requires.

There is clear and convincing evidence that termination of Brylona's parental rights was warranted pursuant to § 43-292(7). In light of this fact, we need not, and do not, further address the sufficiency of the evidence to demonstrate that termination was also warranted pursuant to § 43-292(2) or (6). Brylona's assignment of error which relates to the sufficiency of the statutory authority to support termination is without merit.

## 3. BEST INTERESTS

In the previous section, we found that termination of Brylona's parental rights was appropriate pursuant to § 43-292(7). As a result, we declined to address the sufficiency of the evidence demonstrating that termination was also appropriate pursuant to § 43-292(2) or (6). We, therefore, treat our discussion of whether termination of Brylona's parental rights is in the children's best interests as though § 43-292(7) is the only statutory basis for termination.

In cases where termination of parental rights is based solely on § 43-292(7), the Nebraska Supreme Court has held that appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is, in fact, in the child's best interests. *In re Interest of Aaron D., supra*. In such a situation, because the statutory ground for termination does not require proof of such matters as abandonment, neglect, unfitness, or abuse, as the other statutory grounds do, proof that termination of parental rights is in the best interests of the child will require clear and convincing evidence of circumstances as compelling and pertinent to a child's best interests as those enumerated in the other subsections of § 43-292. *In re Interest of Aaron D., supra*.

Brylona argues that termination of her parental rights is not in Nathaniel's, Jaisean's, and Chakara's best interests. Specifically, she argues that she made significant progress toward achieving reunification with her children by actively participating and cooperating with the tenets of the court-ordered rehabilitation plan. In addition, she argues that the State simply failed to present sufficient evidence to prove that termination was in the best interests of the children.

Brylona's assertions have no merit. The majority of the evidence presented at the termination hearing revealed that Brylona made very little progress toward achieving reunification with her children. Brylona was unwilling to comply with most of the tenets of the court-ordered rehabilitation plan and, as a result, despite the Department's efforts to assist her, Brylona failed to adequately avail herself of any of the opportunities provided to her.

At the outset of this case, Nathaniel, Jaisean, and Chakara were adjudicated to be within the meaning of § 43-247(3)(a) as a result of Brylona's admission to allegations that the children were at risk for harm because she used alcohol and/or controlled substances, she engaged in domestic violence in front of the children, she suffered from untreated mental health problems, and she failed to provide the children with proper supervision. As a result of Brylona's admissions, the juvenile court ordered her to participate in a rehabilitation plan. The plan required Brylona to, among other things, complete a treatment program to address her substance abuse and mental health problems; submit to random drug and alcohol testing; complete a parenting assessment and a parenting class; cooperate with a parenting coach; participate in therapeutic services, which include domestic violence education; and take all prescribed medication. Brylona failed to participate or cooperate with most of the tenets of this rehabilitation plan. As a result, by the time of the termination hearing, she was no closer to achieving reunification with her children than she was when they were removed from her custody, 17 months earlier.

Brylona did not complete a treatment program designed to address her substance abuse and mental health problems. A few months after the children were removed from Brylona's home, she submitted to a psychological evaluation with a clinical psychologist. During this evaluation, Brylona reported that she had a chronic substance abuse problem in that she was a habitual user of crack cocaine. She also reported that she suffers from severe depression. In November 2011, at the same time that the children were removed from her custody, Brylona began an inpatient treatment program which was designed to address her substance abuse and her depression. The clinical psychologist supported Brylona's participation in this dual diagnosis treatment program and, in fact, stated in his report, "Given the virulent nature of [Brylona's] addiction to crack cocaine, it is imperative that the patient successfully complete her drug

rehabilitation program . . . ." He also indicated that it would be very beneficial for Brylona to participate in a program for her chronic and persistent mental illness. He stated his belief that Brylona would not be able to appropriately parent her children until she had successfully completed such programs. The court agreed with the clinical psychologist and ordered Brylona to complete an inpatient dual diagnosis treatment program. Brylona failed to comply with this important rehabilitative goal.

Brylona did not successfully complete the program she was involved with in November 2011. She left the program because she did not like the director of the program, and she refused to attend any other inpatient substance abuse program. In fact, at the termination hearing, Brylona testified that rather than attend inpatient treatment, she had decided to just "not do[] drugs" anymore. However, she also admitted that she had relapsed after leaving inpatient treatment. There was evidence presented at the termination hearing that for a majority of the juvenile court proceedings, Brylona failed to comply with random drug testing. In fact, she was discharged three times from drug testing programs because of her noncompliance. Brylona simply would fail to show up to any requested testing appointments. Brylona also failed to consistently participate in Narcotics Anonymous to address her substance abuse problem. At the time of the termination hearing, she had not spoken to her designated Narcotics Anonymous sponsor for over a year.

After Brylona left her inpatient treatment program, she also failed to cooperate with any mental health treatment. She admitted to not taking her medications, even when she had a valid prescription for that medication. In addition, Brylona did not attend any therapy until approximately February 2013, more than a year after her children had been removed from her custody.

Brylona did complete a parenting class and a parenting assessment. However, despite her participation, she still struggled with her parenting abilities. Brylona was unable to manage having supervised visitation with all three of her children at the same time. As a result, for a majority of the juvenile court proceedings, she had separate, 2-hour visits with each child. And, Brylona had a pattern of failing to take advantage of all of the visitation time offered to her. Brylona's visits remained supervised for the duration of the case. In addition, Brylona was unable to financially care for the children. The evidence at the termination hearing revealed that she did not contribute to the children's care in any significant way.

Essentially, the evidence presented at the termination hearing, when taken together, reveals that Brylona made minimal progress toward achieving any kind of reunification with her children during the pendency of the juvenile court proceedings. We do note that there was evidence that beginning in February 2013, very close to the time when the State started to indicate its intentions to file a motion to terminate Brylona's parental rights, Brylona did begin to comply with some of the rehabilitation goals. For example, Brylona began to be more consistent with drug testing, began to attend outpatient therapy, started to take her prescribed medication, and stopped missing visitations with her children. In addition, in March 2013, Brylona began to have visits with all three children at the same time.

Brylona's efforts since February 2013, while commendable, amount to "too little too late." This court has previously stated, "Last minute attempts by parents to comply with the rehabilitation plan do not prevent termination of parental rights." *In re Interest of Tabitha J.*, 5

Neb. App. 609, 619-20, 561 N.W.2d 252, 260 (1997). Here, Brylona did not make any real efforts toward achieving reunification with her children until the children had already been in an out-of-home placement for approximately 15 months. The Department offered her numerous chances to comply with the rehabilitation goals, but Brylona failed to take advantage of any of these chances. Instead, it appears that Brylona waited to demonstrate any sort of compliance until she knew that the filing of a motion to terminate her parental rights was imminent.

And, we cannot ignore that even though Brylona began to comply with certain tenets of the rehabilitation plan, she still did not comply with perhaps the most important goal of receiving any type of substance abuse treatment. It is more than a little concerning that by the time of the termination hearing, Brylona still did not understand the importance of this court order, nor was she willing to even consider compliance with the order. Instead, Brylona indicated that she was able to just stop using crack cocaine "cold turkey," while at the same time acknowledging the affect this drug has had on her life and on her ability to appropriately parent her children.

Given all of the evidence of Brylona's failure to timely and completely cooperate and participate with the court-ordered rehabilitation plan, it is clear that she is really no closer to achieving reunification with her children than she was in November 2011 when these proceedings were initiated. We have repeatedly stated that where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable amount of time, the best interests of the child require termination of the parental rights; children cannot and should not be suspended in foster care, or be made to await parental maturity. See, e.g., *In re Interest of Sunshine A. et al.*, 258 Neb. 148, 602 N.W.2d 452 (1999). The family's caseworker testified that the children need permanency. We do not disagree with this assessment. We also do not disagree with the caseworker's opinion that Brylona appears unable to provide any permanency or stability now or in the near future.

In the approximately 1½ years that the children have been in an out-of-home placement, Brylona has not made any significant progress toward achieving reunification of any kind. As a result of Brylona's lack of progress and the length of time that has passed, and based upon our de novo review of the record, we affirm the finding of the juvenile court that termination of Brylona's parental rights is in the children's best interests.

V. CONCLUSION

Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Brylona's parental rights to Nathaniel, Jaisean, and Chakara. As such, we affirm the order of the juvenile court terminating her parental rights to the minor children.

AFFIRMED.