## CONCLUSION

In sum, we conclude that at the inception of the case, Meredith and Robert had the legal right to seek grandparent visitation and were entitled to invoke the jurisdiction of the court. However, as a result of the subsequent marriage of Bobbie and Paul, in accordance with the grandparent visitation statutes, the issue of grandparent visitation is moot. Therefore, we reverse the judgment and remand the matter to the district court with directions to deny Meredith and Robert's motion for grandparent visitation as moot.

REVERSED AND REMANDED WITH DIRECTIONS.

---

IN RE INTEREST OF JACOB H. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
V. BRETT H., APPELLANT.

___ N.W.2d ___

Filed April 9, 2013.    No. A-12-491.

1. **Pleadings: Appeal and Error.** Permission to amend a pleading is addressed to the discretion of the trial court, and an appellate court will not disturb the trial court's decision absent an abuse of discretion.
2. **Judges: Recusal: Appeal and Error.** A motion to disqualify a trial judge on account of prejudice is addressed to the sound discretion of the trial court.
3. **Juvenile Courts: Appeal and Error.** Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings.
4. **Pleadings.** When a party seeks leave to amend a pleading in a civil proceeding, the general rule is that leave shall be freely given when justice so requires.
5. ____. A court's denial of a request to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated.
6. **Judges: Recusal: Proof.** In order to demonstrate that a trial judge should have recused himself or herself, the moving party must demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.
7. **Judges: Recusal: Presumptions.** A party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.

8. **Parental Rights: Proof.** For a juvenile court to terminate parental rights under Neb. Rev. Stat. § 43-292 (Cum. Supp. 2012), it must find that one or more of the statutory grounds listed in that section have been satisfied and that termination is in the child's best interests.

9. **Parental Rights.** A termination of parental rights is a final and complete severance of the child from the parent and removes the entire bundle of parental rights; therefore, given such severe and final consequences, parental rights should be terminated only in the absence of any reasonable alternative and as the last resort.

10. **Parent and Child.** The law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child.

Appeal from the County Court for Otoe County: Robert B. O'Neal, Judge. Reversed and remanded for further proceedings.

Diane L. Merwin, Deputy Otoe County Public Defender, for appellant.

Timothy S. Noerrlinger, Deputy Otoe County Attorney, for appellee.

Irwin, Moore, and Pirtle, Judges.

Irwin, Judge.

## I. INTRODUCTION

Brett H. appeals from the order of the county court which terminated his parental rights to his four minor children, Jacob H., Madison H., Megan H., and Morgan H. On appeal, Brett challenges the statutory basis for termination of his parental rights and the county court's finding that termination is in the children's best interests. In addition, Brett argues that the county court erred in allowing the State to amend its motion to terminate his parental rights and erred in not recusing itself from the termination proceedings. Upon our de novo review of the record, we conclude that the county court did not err in allowing the State to amend its motion to terminate Brett's parental rights or in failing to recuse itself from the termination proceedings. In addition, we find that there was a sufficient statutory basis for terminating Brett's parental rights. However, we also find that the State failed to adduce sufficient evidence to clearly and convincingly demonstrate

that termination of Brett's parental rights is in the children's best interests. Accordingly, we reverse, and remand for further proceedings.

## II. BACKGROUND

Brett's appeal involves his four minor children: Jacob, born in August 2003, and Madison, Megan, and Morgan, triplets born in October 2004. The children's mother, Lisa H., relinquished her parental rights to all four of the children and is not a party to this appeal. In addition, Alexandria H., the fifth child named in the lower court proceedings, is not a subject of this appeal. Alexandria is Lisa's daughter and Brett's stepdaughter. Because Alexandria is not Brett's biological child, her involvement in this case will not be discussed further.

In October 2009, Jacob, Madison, Megan, and Morgan were removed from Brett and Lisa's home after police were called to the home due to a report of domestic violence. Ultimately, Brett was arrested on a charge of domestic assault, and subsequent interviews with the children revealed that Brett and Lisa often fought in front of the children and regularly consumed alcohol.

On October 9, 2009, the State filed a petition and an accompanying affidavit alleging that the children were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). Specifically, the State alleged that the children were at risk for harm because Brett had recently been arrested for domestic assault, there was a history of domestic violence in the home, both Brett and Lisa consume alcohol in the children's presence, and the children were afraid to be in the home.

On the same day the petition was filed, the county court entered an order placing the children in the custody of the Nebraska Department of Health and Human Services (the Department). The order stated that placement of the children was not to include Brett's home.

In January 2010, Brett admitted to the allegations in the petition. As a result of his admissions, the children were adjudicated to be within the meaning of § 43-247(3)(a).

In February 2010, approximately 1 month after Brett entered his admission to the allegations in the petition, a disposition

hearing was held. At this hearing, Brett was ordered to complete inpatient chemical dependency treatment and a domestic violence education program. In addition, he was permitted to have supervised visitation with the children.

In May 2010, another disposition hearing was held. By the time of this hearing, Brett had completed inpatient chemical dependency treatment and had attended substance abuse group meetings daily for approximately 3 months. In addition, he had regularly submitted to drug testing which revealed he was not using controlled substances. Brett was actively participating in supervised visitation with the children, and visits were going well. As a result of Brett's progress, the court ordered that Brett was to have "monitored" visitation with the children and that if Brett continued to make progress during the next 30 to 45 days, he was to be permitted overnight visitation with the children.

In August 2010, a third disposition hearing was held. At this hearing, the court ordered that the children may be transitioned back into Brett's home. All four children returned to Brett's home on September 10.

In December 2010, a fourth disposition hearing was held. At this hearing, the county court ordered Brett to complete a parenting education program and to continue to attend substance abuse group meetings. Shortly after this hearing, on December 28, the children were removed from Brett's home after the Department discovered that Brett was consuming alcohol in the home.

After the children were removed from Brett's home, he was permitted only supervised visitation. Visitations were held once a week and were scheduled such that Brett visited with Jacob one week and with the triplets the next week. As a result, Brett saw each child only once every other week.

In February 2011, Brett enrolled in another substance abuse treatment program; however, he did not successfully complete the program. Despite Brett's failure to complete the treatment program, there is no indication that Brett continued to use or abuse alcohol or controlled substances after January 2011.

On April 22, 2011, the State filed a motion to terminate Brett's parental rights to Jacob, Madison, Megan, and

Morgan. In the motion, the State alleged that termination was warranted pursuant to Neb. Rev. Stat. § 43-292(2) (Cum. Supp. 2012) because Brett substantially and continuously or repeatedly neglected and refused to give the children necessary parental care and protection; § 43-292(4) because Brett was unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct was seriously detrimental to the health, morals, or well-being of the children; and § 43-292(6) because following a determination that the children were as described in § 43-247(3)(a), reasonable efforts to preserve and reunify the family failed to correct the conditions leading to the determination. In addition, the State alleged that termination of Brett's parental rights was in the children's best interests.

At some point after the State filed its motion to terminate Brett's parental rights, but before a hearing was held on the motion, Brett indicated to the Department that he wanted to relinquish his parental rights to the children. As a result of Brett's decision, the Department stopped providing Brett visitation with the children in October 2011. However, Brett never finalized the relinquishment process. And, in December 2011, Brett changed his mind and decided he wanted to resume his efforts toward reunification with the children after learning that if he relinquished his parental rights, he would have no further contact with any of his children. After Brett changed his mind regarding the relinquishment, the Department did not reinstate his visitation with the children.

On March 29, 2012, a hearing on the State's motion to terminate Brett's parental rights began. At the start of the hearing, the State asked for leave to amend the motion to terminate in order to include an allegation that termination of Brett's parental rights was also warranted pursuant to § 43-292(7) because the children had been in an out-of-home placement for 15 or more months of the most recent 22 months. The State's request was apparently prompted by the court's asking the State to clarify if the original motion alleged that termination was warranted pursuant to § 43-292(7). Brett objected to such an amendment, arguing that the State's request was made too

close in time to the start of the hearing and that the court's prompting the State about the absence of an allegation regarding § 43-292(7) was improper. The court ultimately granted the State's request to amend the motion, but decided to give Brett additional time to prepare for the termination hearing.

The termination hearing resumed on April 3, 2012. While we have reviewed the evidence presented at the termination hearing in its entirety, we do not set forth the specifics of the voluminous testimony and exhibits here. Instead, we will set forth more specific facts as presented at the hearing as necessary in our analysis below.

After the termination hearing, the county court entered an order finding that the State proved by clear and convincing evidence that grounds for termination of Brett's parental rights existed under § 43-292(2), (4), (6), and (7). The county court found that Brett was an unfit parent and that termination of his parental rights was in the children's best interests. The court then terminated Brett's parental rights to Jacob, Madison, Megan, and Morgan.

Brett appeals from the county court's order.

## III. ASSIGNMENTS OF ERROR

On appeal, Brett alleges, restated and consolidated, that the county court erred in (1) finding a sufficient statutory basis to terminate his parental rights pursuant to § 43-292, (2) finding that termination of his parental rights was in the children's best interests, (3) permitting the State to amend its motion to terminate his parental rights, and (4) failing to recuse itself from the termination proceedings.

## IV. ANALYSIS

### 1. Standard of Review

[1] Permission to amend a pleading is addressed to the discretion of the trial court, and an appellate court will not disturb the trial court's decision absent an abuse of discretion. *Intercall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012).

[2] A motion to disqualify a trial judge on account of prejudice is addressed to the sound discretion of the trial court. *In*

*re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

[3] Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

### 2. AMENDMENT TO MOTION TO TERMINATE PARENTAL RIGHTS

Before we address Brett's specific assertions concerning the termination of his parental rights, we first address his assignments of error which relate to the amendment to the motion to terminate his parental rights. Brett alleges that the county court erred in permitting the State to amend the motion by adding an allegation that termination of Brett's parental rights was warranted pursuant to § 43-292(7). In particular, Brett alleges that the court erred in permitting such an amendment on the day the termination hearing was to begin. However, because Brett does not allege he was prejudiced by the court's decision to permit the amendment, his assertion has no merit.

The State filed its original motion to terminate Brett's parental rights on April 22, 2011. In that motion, the State alleged that termination was warranted pursuant to § 43-292(2), (4), and (6) and was in the children's best interests.

The termination hearing was scheduled to begin on March 29, 2012. At the start of the hearing, the county court asked the parties to make an opening statement. At the end of the State's opening statement, the prosecutor made the following remarks:

> The [S]tate believes that the children are — have been out of the home for 15 of the last 22 months, that the evidence will show that [Brett] is an unfit parent and that he also failed to comply with the court plan fully and creating a basis for his — the reason that we're here today for termination of his parental rights.

Based on the State's comments, the court indicated that "it [did not] appear that there [had] been an allegation of the 15 out of 22 months" on the original motion to terminate Brett's parental rights. The State told the court that it was correct, but that the absence of such an allegation was a mistake because "it [was] one of the main bases for proceeding." The State then requested to amend the motion to terminate Brett's parental rights in order to include an allegation that termination was also warranted pursuant to § 43-292(7) because the children had been in an out-of-home placement for 15 or more months of the most recent 22 months. Brett objected to the State's request to amend the motion "at th[at] late stage in the process."

The court and the parties discussed the issue of the amendment of the motion to terminate Brett's parental rights off the record and in the court's chambers. When the parties returned to the courtroom, the court indicated on the record that it was going to permit the State to amend the motion to terminate. The court also indicated that it was going to give Brett additional time to prepare for the hearing. The court continued the termination hearing for approximately 5 days until April 3, 2012. The court explained its decision:

> [A]s I discussed in chambers, while certainly [Brett] has been aware of the fact that the children have been in out-of-home care for [at least 15 of the most recent 22 months pursuant to § 43-292(7)], regardless of whether there was an allegation, the other required elements regarding unfitness and best interests would likely have been — would likely have been discussed and there would be evidence presented on the — because of the remain — the remaining or the existing allegations.
>
> So I — it's my belief and determination that there's no prejudice that arises to [Brett] as a — as a result, particularly since we're going to give additional time for preparation.

After the close of the March 29, 2012, hearing, Brett filed a written objection to the amendment to the motion to terminate his parental rights. At the start of the termination hearing on April 3, the court again found that the amendment to the

motion to terminate was proper and that Brett had been given sufficient time for preparation.

[4,5] On appeal, Brett alleges that the county court erred in permitting the State to amend the motion to terminate his parental rights by adding an allegation that termination was warranted pursuant to § 43-292(7) so close in time to the start of the termination hearing. When a party seeks leave to amend a pleading in a civil proceeding, the general rule is that leave shall be freely given when justice so requires. See *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012). In fact, a court's denial of a request to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated. See *id*.

Brett does not allege that he was prejudiced in any way by the amendment to the motion to terminate his parental rights. And, as the record reflects, the court provided Brett additional time to prepare for the termination hearing due to the amendment, although it is clear that the length of time the children had been in an out-of-home placement was extremely relevant to the termination hearing and Brett should have been prepared to defend against such an assertion even without the specific allegation pursuant to § 43-292(7). In addition, we note, as we discuss more thoroughly below, that the amendment to the motion was appropriate because there was uncontradicted evidence presented at the termination hearing that the children had been in an out-of-home placement for at least 15 of the most recent 22 months as is required by § 43-292(7).

Because Brett does not allege, nor does the evidence reveal, that he was prejudiced in any way by the State's amendment to the motion to terminate his parental rights, we find that the county court did not abuse its discretion in permitting the State to amend the motion. Brett's assertion to the contrary has no merit.

### 3. Recusal

Brett also alleges that the county court judge erred in failing to recuse himself from the termination proceedings after he

acted impartially by "directing the attention of the [S]tate [to] the failure on the pleadings to make a specific allegation" pursuant to § 43-292(7). Brief for appellant at 32. Because we find that no reasonable person would have questioned the judge's impartiality when he asked the State about the allegations in the motion to terminate, we conclude that Brett's assertion has no merit.

[6,7] Under the Nebraska Revised Code of Judicial Conduct, a judge must recuse himself or herself from a case if the judge's impartiality might reasonably be questioned. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). In order to demonstrate that a trial judge should have recused himself or herself, the moving party must demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. *Id.* In addition, a party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *Id.*

We first note that Brett never asked the county court judge to recuse himself from the termination proceedings. In fact, at the start of the hearing on April 3, 2012, the judge asked Brett's counsel, "Do you wish me to recuse myself?" Counsel indicated to the judge that she "did not ask for that in the motion."

Moreover, contrary to Brett's assertions, the record reveals that the county court judge did not encourage the State to amend the motion to terminate or explicitly question the State about the absence of an allegation pursuant to § 43-292(7). Instead, the court asked a clarification question of the State after the State included in its opening statement language about the length of time the children had been in an out-of-home placement. The court's question apparently prompted the State to review its motion to terminate, and at that point, the State realized it had mistakenly omitted the allegation concerning § 43-292(7).

Based on our reading of the record, we cannot say that a reasonable person would have questioned the court's impartiality

in the termination proceedings. As such, we find that the court did not err in failing to recuse itself from the juvenile court case.

### 4. Termination of Parental Rights

We now turn to Brett's assignments of error which concern the county court's decision to terminate his parental rights to his four minor children. On appeal, Brett challenges the county court's finding that there is a sufficient statutory basis for termination of his parental rights and its finding that termination is in the children's best interests. Upon our de novo review, we conclude that there is clear and convincing evidence to support the statutory basis for termination of Brett's parental rights. However, we find that the court erred in finding sufficient evidence that termination is in the children's best interests. As such, we reverse, and remand for further proceedings.

[8] For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in that section have been satisfied and that termination is in the child's best interests. See *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). The State must prove these facts by clear and convincing evidence. *Id.* Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *Id.*

### (a) Statutory Basis for Termination

In this case, the State alleged and the county court found that termination of Brett's parental rights to Jacob, Madison, Megan, and Morgan was warranted pursuant to § 43-292(2), (4), (6), and (7). Upon our de novo review of the record, we find that the evidence presented at the termination hearing clearly and convincingly demonstrated that all four of the children were in an out-of-home placement for at least 15 of the most recent 22 months, pursuant to § 43-292(7). As such, we need not specifically address whether or not there was sufficient evidence to support termination pursuant to § 43-292(2), (4), or (6).

The evidence presented at the termination hearing revealed that Jacob, Madison, Megan, and Morgan were removed from Brett's home in October 2009. The children remained in an out-of-home placement until September 2010, when they were transitioned back into Brett's home. In December 2010, however, the children were again removed from Brett's home. After December 2010, they remained in an out-of-home placement through April 2011, when the State filed its motion to terminate Brett's parental rights, and through March 2012, when the termination proceedings began. As such, at the time of the termination hearing, the children had been in an out-of-home placement for 18 of the most recent 22 months. And, notwithstanding the 4 months the children lived with Brett from September to December 2010, the children had been in an out-of-home placement for more than 2 years by the time of the termination hearing.

Based on these facts, we conclude that there is clear and convincing evidence that termination of Brett's parental rights is appropriate pursuant to § 43-292(7). In light of this fact, we need not, and do not, further address the sufficiency of the evidence to demonstrate that such termination was also appropriate pursuant to § 43-292(2), (4), or (6).

### (b) Best Interests

Brett also asserts that the county court erred in determining that termination of his parental rights is in the best interests of the children. Specifically, Brett argues that he has made progress toward reunification with his children; that he has a strong bond with his children; that his only setback toward the goal of reunification occurred in December 2010, when he began to consume alcohol again for a brief period of time; that after December 2010, the Department stopped providing him assistance and eventually stopped providing him visitation with the children; and that but for the Department's termination of efforts, he would have been able to achieve reunification.

Upon our review of the record, we find insufficient evidence to demonstrate that terminating Brett's parental rights to Jacob, Madison, Megan, and Morgan is in the children's best interests.

As such, we reverse the juvenile court's order terminating Brett's parental rights to these four children.

[9,10] A termination of parental rights is a final and complete severance of the child from the parent and removes the entire bundle of parental rights; therefore, given such severe and final consequences, parental rights should be terminated only in the absence of any reasonable alternative and as the last resort. See, *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010); *In re Interest of Crystal C.*, 12 Neb. App. 458, 676 N.W.2d 378 (2004). The law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *Id.*

The evidence presented by the State at the termination hearing revealed that the children were removed from Brett's care in October 2009 after he was arrested and charged with assaulting Lisa. These charges were eventually dropped.

Shortly after the children were removed from Brett's care, he entered inpatient treatment to address his substance abuse issues. Brett's treatment revealed that he had a severe back problem that caused him a great deal of pain. Brett had a history of abusing alcohol and controlled substances as a way of dealing with his pain. Brett successfully completed the inpatient treatment program and went on to maintain his sobriety after his release from the program. Brett began seeing a new doctor who adjusted Brett's pain medication in order to help him manage his condition without abusing alcohol or controlled substances.

Brett's visitation with his children went well, and he was quickly given the opportunity to have unsupervised, overnight visitation with all four of the children. In September 2010, less than 1 year after the initial removal, the children were returned to Brett's home. With the help of Brett's family, he was able to appropriately care for the children until approximately November or December 2010, when Brett began to again consume alcohol in order to help manage his pain. During this time, Brett was transitioning to a new pain medication, and as a result, he was apparently undermedicated. Instead of asking his doctor for help, Brett turned to alcohol to self-medicate. He

admitted to his mistake, and the children were removed from his home.

After the children were removed from Brett's home in December 2010, the Department permitted him to have weekly visitation with the children. This visitation was scheduled such that Brett visited with Jacob one week and with the triplets the next week. This schedule was a result of Brett's and the Department's concerns that Jacob often did not receive much attention during the short group visitations because of the attention demanded by the triplets.

Visitation with the children was terminated in the fall of 2011, when Brett expressed an interest in relinquishing his parental rights to the children. Brett was under the impression that if he relinquished his parental rights, the children's foster parents would permit him to maintain contact and a relationship with the children. Brett changed his mind about the relinquishment after learning that he would not be entitled to any contact with the children. The Department never reinstated his visitation.

Additionally, after the children were removed from Brett's home in December 2010, the Department terminated the services it had previously provided to Brett to help him achieve reunification. As a result, at the termination hearing, the Department caseworkers provided very little, if any, testimony about Brett's circumstances from January 2011 through the time of the hearing in April 2012. The caseworkers did not know whether Brett maintained his sobriety, where he was residing, whether he was employed, or anything else about his current circumstances.

Brett did provide some evidence about his circumstances in the 16 months prior to the termination hearing. Such evidence revealed that he did not complete further substance abuse treatment, but that he had maintained his sobriety with no further "relapses" with the help of his doctor. He had maintained a stable residence and continued to have a desire to be reunited with his children. In addition, he attended almost every visit with the children that was offered to him and he attempted to maintain contact with the Department even though the caseworkers did not seek out any contact with him.

Upon our de novo review of the record, we find that a large portion of the evidence offered both by the State and by Brett revealed that Brett made strong efforts toward reunification with his children during the early stages of this case. He submitted to inpatient substance abuse treatment and appeared to maintain a safe and stable lifestyle. The positive changes Brett made to his life facilitated the return of the children to his home. Unfortunately, Brett experienced some setbacks with his sobriety once his children were returned to his care and the children were returned to an out-of-home placement. Of course, Brett's actions while his children were in his care are concerning. The children were not in Brett's home for a terribly long period of time before he began to consume alcohol again. And, such a rapid setback could indicate that he is simply unable to appropriately parent his children while maintaining his sobriety.

However, it is not entirely clear exactly what this setback meant in terms of Brett's ability to parent, because after his relapse, the Department's efforts to reunify Brett with his children dramatically decreased and eventually ended altogether. As a result, we do not have much information about what Brett did after the relapse or whether this relapse was an isolated event or a pattern of behavior. As we mentioned above, we do not expect perfection in a parent, but, rather, a continued effort to become a better and more appropriate parent. And, because termination of parental rights is such a severe consequence, we must be sure that it is used as a last resort.

Based on the evidence presented at the termination hearing, we cannot say that there is sufficient evidence to demonstrate that termination of Brett's parental rights is in the children's best interests. Evidence that Brett had one setback on his road toward reunification with the children is simply insufficient to demonstrate that termination is the last resort available for this family. There was insufficient evidence to demonstrate that Brett's relapse in December 2010 was a pattern of behavior rather than an isolated event and that Brett is currently incapable of appropriately parenting the children. The Department's unilateral decision to terminate services to Brett and to terminate his visitation with the children produced a

lack of evidence about Brett's circumstances for the 16 months prior to the termination hearing.

Due to this insufficiency in the evidence, we reverse the county court's order terminating Brett's parental rights to Jacob, Madison, Megan, and Morgan, and remand the matter to the county court for further proceedings consistent with this opinion.

## V. CONCLUSION

Upon our review of the record, we conclude that the county court did not err in permitting the State to amend its motion to terminate Brett's parental rights or in failing to recuse itself from the termination proceedings. In addition, we conclude that there is clear and convincing evidence to demonstrate that the children have been in an out-of-home placement for 15 of the most recent 22 months pursuant to § 43-292(7). However, we also conclude that there is insufficient evidence to demonstrate that termination of Brett's parental rights is in the best interests of Jacob, Madison, Megan, and Morgan. Accordingly, we reverse the order terminating Brett's parental rights and remand the matter to the county court for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.