IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

CITY OF HASTINGS V. HUGHES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CITY OF HASTINGS, STATE OF NEBRASKA, APPELLEE,
V.
MARVIN HUGHES, APPELLANT.

Filed April 22, 2014.    No. A-13-476.

Appeal from the District Court for Adams County, TERRI S. HARDER, Judge, on appeal thereto from the County Court for Adams County, MICHAEL OFFNER, Judge. Judgment of District Court affirmed.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Robert M. Sullivan, of Sullivan Shoemaker, P.C., L.L.O., for appellee.

INBODY, Chief Judge, and PIRTLE and RIEDMANN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Marvin Hughes appeals the order of the Adams County District Court affirming the order of the Adams County Court convicting Hughes of 21 ordinance violations. For the reasons that follow, we affirm.

## II. BACKGROUND

Hughes is a resident of Hastings, Nebraska. Hughes owns a building located on Hastings Avenue, which building which was formerly owned by the Hastings Public Schools. At the time the building was owned by the Hastings Public Schools, the building was inspected by the State Fire Marshal. When the building ceased to be used as a school, the responsibility for inspections shifted to the Hastings Fire Department.

In July 2011, the fire department received notice from Hughes instructing the department not to enter his property. The same notice was provided to the city administrator, city attorney,

city clerk, city police chief, building inspector, electrical inspector, plumbing inspector, and health inspector. The notices stated that Hughes would "not allow any trespass by any city employee or individuals contracted by the city or any departments or agencies working in conjunction with the city, to trespass or photograph any properties owned by Marvin E. Hughes or any company owned by Marvin E. Hughes." The notice also provided that he required a "land use fee" of $5,000 per person per day if anyone entered his property and a "photograph fee" of $1,000 per photograph taken.

After receiving the notice from Hughes, the city building inspector, Mark Evans, called Hughes and requested an inspection. Evans testified that Hughes sent a notice to him that he would be trespassing if he were to enter the property without written permission from Hughes. On a few occasions, Hughes gave Evans permission to look at different places in the building, but on other occasions, Hughes declined Evans' request to inspect the property. Evans testified that construction work was being performed at the building, but applications or permits had not been submitted. He noted that one application was made by a tenant of the building, but it was denied on the basis that a full building inspection was necessary prior to granting a permit for a portion of the building.

The city electrical inspector, Lewis Seberg, testified that he was driving by the building and saw electrical contractors parked in front of it. He contacted those contractors and discovered there was work being done that would require a permit. Seberg testified that the contractors told him Hughes did not want building permits taken out. Seberg contacted Hughes by telephone and requested an inspection, and Hughes told him that permits had not been issued and Seberg's presence was not required. Seberg understood Hughes' response to be a denial of his request to inspect the property.

The fire department also received information that Hughes was performing electrical work without a permit. According to the city fire chief, Kent Gilbert, performing electrical work without a permit presents a serious concern, especially given the common occurrence of electrical fires. He expressed concern for the safety of the businesses within the property, which were open to the general public, and in the case of a fire, the risk to the inhabitants of the building as well as potential emergency responders. He opined that an emergency existed, and the issuance of a warrant for inspection of the premises was appropriate. As a result of these concerns, Gilbert applied for a warrant to inspect Hughes' property on or about August 10, 2011. Gilbert's affidavit for a warrant set forth that he believed an emergency existed which necessitated an inspection of the premises and that the fire department requested entry in July 2011 "for purposes of determining the layout of the building, the uses employed in the building and other factors that the Fire Department uses in determining whether or not to enter [a] building if there is a fire." The affidavit further set forth that this type of review is conducted regularly to protect the lives of firefighters and possible building occupants and to develop a plan for fire suppression for each structure in town. An inspection warrant was issued on August 10, because the county court was satisfied that probable cause existed to check for dangerous building conditions under the Hastings City Code.

After obtaining the warrant, on August 11, 2011, the property was inspected by the city building inspector, electrical inspector, and fire prevention officer. As a result of the inspection, on December 22, Hughes was charged in Adams County Court with numerous counts of

violating ordinances of the City of Hastings, the International Building Code, the National Electric Code, and the International Fire Code.

Hughes filed a "Motion to Quash Warrant and Suppress Evidence," and after a hearing on the issues, his motion was denied. The court found he failed to enter the warrant as evidence, he provided no testimony, and he did not allege what evidence was found in the investigation that should have been suppressed.

Following a bench trial, the county court found Hughes guilty on each count alleged in the complaint. Hughes appealed to the Adams County District Court. On appeal, the exhibits entered in the county court were not incorporated in the record on appeal to the district court. The district court, based upon the record before it, affirmed the decision of the county court.

## III. ASSIGNMENTS OF ERROR

On appeal, Hughes contends that the county court erred (1) in failing to find that the warrant was invalid and in allowing evidence obtained as a result of an illegal entry onto his property; (2) in not allowing a jury trial; (3) in not allowing him to challenge jurisdiction; (4) in failing to recuse the county court judge; and (5) in holding Hughes, a pro se litigant, to a higher standard of courtroom procedure.

Additionally, Hughes has assigned as error, but does not specifically argue, that (1) his constitutional rights to equal protection and due process rights were violated, (2) the ordinances were unconstitutional, and (3) there was insufficient evidence to support the findings of the trial court. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *City of Gordon v. Montana Feeders Corp.*, 273 Neb. 402, 730 N.W.2d 387 (2007). See Neb. Ct. R. § 2-109(D)(1) (rev. 2012). Therefore, we decline to consider these assigned errors.

## IV. STANDARD OF REVIEW

Upon appeal from a county court in a criminal case, a district court acts as an intermediate appellate court, rather than a trial court, and its review is limited to an examination of the county court record for error or abuse of discretion. *State v. Wilson*, 17 Neb. App. 846, 771 N.W.2d 228 (2009). Both a district court and a higher appellate court generally review appeals from a county court for error appearing on the record. *Id.*

## V. ANALYSIS

### 1. SUPPRESSION OF EVIDENCE OBTAINED
### UPON ILLEGAL ENTRY

Hughes filed a "Motion to Quash Warrant and Suppress Evidence," and after a hearing, his motion was denied by the county court, because he failed to enter the warrant as evidence, he provided no testimony, and he did not allege what evidence was found in the investigation that should have been suppressed. Hughes raised this issue on appeal to the district court, which found no error appearing on the record.

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review: regarding historical facts, the appellate court reviews the trial court's findings for clear error; but whether

those facts trigger or violate Fourth Amendment protection is a question of law that the appellate court reviews independently of the trial court's determination. *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012).

Upon appeal from a county court in a criminal case, a district court acts as an intermediate appellate court, rather than a trial court, and its review is limited to an examination of the county court record for error or abuse of discretion. *State v. Wilson, supra*. Both a district court and a higher appellate court generally review appeals from a county court for error appearing on the record. *Id.*

On appeal to this court, Hughes contends that the district court erred in affirming the county court's denial of his motion to quash and suppress evidence. He contends that, because city officers entered his property without his permission, the evidence obtained as a result of that illegal entry should have been suppressed.

Pursuant to Neb. Rev. Stat. § 29-832 (Reissue 2008), inspection warrants shall be issued when consent for inspection has been denied. Additionally, neither consent nor a warrant is required in emergency situations. *Id.*

The fire department requested entry in July 2011 "for purposes of determining the layout of the building, the uses employed in the building and other factors that the Fire Department uses in determining whether or not to enter [a] building if there is a fire." This type of review is conducted regularly to protect the lives of firefighters and possible occupants. Further, Gilbert's affidavit stated the fire department was in the process of developing a plan for fire suppression for each structure in town; thus, there was no evidence that the fire department was simply singling out this property for inspection. The record is uncontroverted that Hughes "ordered" the fire department, city administrator, city attorney, city clerk, city police chief, building inspector, electrical inspector, plumbing inspector, and health inspector not to enter his property.

Upon our review of the record, the evidence further establishes that Gilbert's affidavit in support of the warrant set forth that he believed an emergency existed necessitating an inspection of Hughes' building. The fire department was informed that Hughes was performing electrical work without a permit, which presented a serious concern, especially given the common occurrence of electrical fires. Gilbert expressed his concern for the safety of the businesses within the property, which were open to the general public, and, in the case of a fire, the risk to the inhabitants of the building as well as potential emergency responders. He opined that an emergency existed and that the issuance of a warrant for inspection of the premises was appropriate.

Upon our review of the record, we find no error appearing on the record regarding the district court's affirmance of the county court's denial of Hughes' motion to quash and suppress evidence. Thus, this assignment of error is without merit.

### 2. REQUEST FOR JURY TRIAL

Hughes asserts the district court erred in affirming the county court's denial of his request for a jury trial. Hughes contends that denial of his right to a jury trial resulted in a violation of his constitutional rights and a violation of his right to equal protection under the law. The city argues that defendants charged with infractions are not entitled to a jury trial and that there is no

constitutional right to a jury trial for petty offenses carrying a maximum sentence of 6 months or less. See *State v. Cozzens*, 241 Neb. 565, 490 N.W.2d 184 (1992).

Neb. Rev. Stat. § 25-2705 (Cum. Supp. 2012) states in part, "Either party to any case in county court, except criminal cases arising under city or village ordinances, traffic infractions, other infractions, and any matter arising under the Nebraska Probate Code or the Nebraska Uniform Trust Code, may demand a trial by jury." The right to a jury trial is protected by the Nebraska Constitution for serious offenses, that is, an offense punishable by incarceration for more than 6 months. *State v. Cozzens,* supra.

Hughes' request for a jury trial was based on the language in the complaint, specifically count 1, which stated:

> On or about August 11, 2011, . . . Hughes did commence construction [on a building on] Hastings [Avenue] without drawings or documents, sealed by a licensed architect, contrary to the ordinances of the City of Hastings, Nebraska, and particularly contrary to Hastings City Code Section 28-101, 107.1 of the International Building Code and Neb. Rev. Stat. §81-3401 et. seq.

Hughes asserts that he was charged with a violation of a state statute and that although the statute is unspecified, it could have been a misdemeanor carrying a possibility of a jail sentence, therefore entitling him to a jury trial.

Our review of the evidence shows that, although the complaint references "Neb. Rev. Stat. §81-3401 et. seq.," the Engineers and Architects Regulation Act, Hughes was not actually charged with a specific offense under the act and was never subject to the possible penalties listed within the act. We find that the underlying charge in count 1 of the complaint was a violation of the Hastings City Code and was, therefore, an infraction.

The evidence shows it was not the city's intention to prosecute Hughes for a violation of the Engineers and Architects Regulation Act. Rather, Hughes was to be charged with multiple city ordinance violations. This conclusion is supported by the language of the complaint, which states the possible penalty to be levied against Hughes for each count alleged was "$100.00 per count pursuant to Sections 1-109 and 1-110 of the Hastings City Code. And further relief as allowed in Chapter 1 of the International Property Maintenance Code." The journal entry and order of the county court for Adams County notes that Hughes pled not guilty to each charge and that each charge was listed as an infraction.

During the arraignment proceedings, the court read each of the charges contained in the complaint into the record. The court noted that count 1 alleged a violation of a city code, and although it included the reference to "Neb. Rev. Stat. §81-3401," the court did not reference any charges or penalties associated with the Nebraska Revised Statutes. During the same proceeding, the court stated, based on the complaint, "There's no possibility of jail. This is not a misdemeanor, it's just a city code infraction." The court stated that it was important for Hughes to understand the charges and restated that Hughes was charged only with city code infractions, not misdemeanors, and that there was no possibility of a penalty involving a jail sentence.

We conclude that each count contained in the complaint was an infraction carrying no possibility of a jail sentence and that therefore, Hughes was not entitled to a jury trial under

§ 25-2705. Hughes did not have the right to a jury trial, and we affirm the district court's finding that there was no clear error on the record in this regard.

### 3. FAILING TO ALLOW CHALLENGE
### TO JURISDICTION

Hughes next contends that the district court erred in affirming the county court's failure to allow him to challenge the county court's jurisdiction prior to his trial because (a) the city attorney charged him with violation of a Nebraska statute and (b) the certified copies of the code sections for which he was cited were not on file with the Adams County Court.

### (a) City Attorney Charging Violation
### of Nebraska Statute

We have determined that, in this case, the mere mention of an act contained in the Nebraska Revised Statutes, without more, did not amount to an actual charge for violation of a specific section of that act. Having found that counts 1 through 21 of the complaint alleged only violations of the Hastings City Code, we need not determine whether a city attorney has jurisdiction to charge a violation of the Nebraska Revised Statutes. See *Svehla v. Beverly Enterprises*, 5 Neb. App. 765, 567 N.W.2d 582 (1997) (appellate court need not engage in analysis which is not needed to adjudicate case and controversy before it). We affirm the findings of the district court.

### (b) Certified Copies of Code
### Not on File With Court

Hughes also asserts the county court lacked jurisdiction over his case because certified copies of the code sections for which he was cited were not on file with the Adams County Court as required by Neb. Rev. Stat. § 25-2703 (Reissue 2008). For this reason, Hughes asserts that he should not have been prosecuted and that there was not sufficient evidence to sustain his convictions.

Section 25-2703 sets forth that "no city or village may prosecute complaints for violations of ordinances unless such city or village has on file with the court a current copy of the ordinances of such city or village."

Although this statute does require ordinances to be kept on file with the court, there is no corresponding requirement for copies of code sections, which is what Hughes is arguing. National and international codes are not city ordinances and, therefore, are not required to be on file with the local court according to the language of § 25-2703. Thus, upon our review of the record, we find no clear error and find this assignment of error to be without merit.

### 4. RECUSAL OF TRIAL JUDGE

Hughes asserts the county court judge who presided over his trial violated the Nebraska Code of Judicial Conduct and should have been recused. He asserts that because the trial judge was the same judge who signed the warrant for the inspection of Hughes' property, the judge should have recused himself.

In order to demonstrate that a trial judge should have recused himself or herself, the moving party must demonstrate that a reasonable person who knew the circumstances of the case

would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. *In re Interest of Jacob H. et al.*, 20 Neb. App. 680, 831 N.W.2d 347 (2013). In addition, a party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *Id.*

At trial, Hughes told the judge that "if you should choose to do the trial, then you would set yourself up for vicarious trespass because you was [sic] also the one that signed the illegal inspection warrant of my building." However, Hughes did not ask the judge to recuse himself, and when the county court judge specifically asked Hughes if he would prefer a different judge, Hughes chose not to request one. One may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error. *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012). Thus, we affirm the district court's determination that there was no error in this regard and this assignment of error is without merit.

## 5. STANDARD FOR PRO SE PARTIES

Hughes asserts that the district court erred in failing to find that the county court did not err by holding Hughes, a pro se litigant, to a higher standard of courtroom procedure. In Nebraska, a pro se party is held to the same standard as one who is represented by counsel. *State v. Lindsay*, 246 Neb. 101, 517 N.W.2d 102 (1994). Further, upon our review of the record, it is more than apparent that the trial judge was extremely patient with Hughes and gave Hughes wide latitude during the trial of this matter. As a result, upon our review of the record, we find this assignment of error is without merit.

## VI. CONCLUSION

Upon our review of the record in this case, we find no clear error and affirm the district court's order which affirmed the county court's order.

AFFIRMED.