IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

IN RE INTEREST OF ALEXANDRIA H. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ALEXANDRIA H. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

BRETT H., APPELLANT.

Filed April 28, 2015.    No. A-14-610.

Appeal from the County Court for Otoe County: ROBERT B. O'NEAL, Judge. Affirmed.

Diane L. Merwin, Deputy Otoe County Public Defender, for appellant.

John R. Palmtag, Deputy Otoe County Attorney, for appellee.

John W. Voelker, guardian ad litem.

MOORE, Chief Judge, and IRWIN and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Brett H. appeals an order of the county court for Otoe County, sitting as a juvenile court, terminating his parental rights to four children. On appeal, Brett asserts that there was insufficient evidence to establish statutory grounds for termination, that there was insufficient evidence to demonstrate that termination was in the children's best interests, and that the court violated Brett's due process rights by denying his motion for recusal. We find the assertions on appeal to lack merit, and we affirm.

- 1 -

## II. BACKGROUND

This is the second appearance of this case before this court. In *In re Interest of Jacob H.*, 20 Neb. App. 680, 832 N.W.2d 347 (2013), we reversed a termination of Brett's parental rights upon finding that the evidence adduced at that time was insufficient to demonstrate that termination of parental rights was in the best interests of the children. The current appeal arises out of the lower court's entry of a second order terminating Brett's parental rights. The factual background of the case prior to our previous appeal was set forth in our prior opinion, and we summarize it as relevant here.

This case involves Brett and his four minor children: Jacob, born in August 2003; and Madison, Megan, and Morgan, triplets born in October 2004. The children's mother, Lisa H., relinquished her parental rights to all four of the children and is not a party to the case. In addition, Alexandria H., the fifth child named in the lower court proceedings, is not a subject of this appeal.

In October 2009, the children were removed from Brett and Lisa's home after police were called to a report of domestic violence. Brett was ultimately arrested on a charge of domestic assault, and subsequent interviews with the children revealed that Brett and Lisa often fought in front of the children and regularly consumed alcohol.

In October 2009, the State filed a petition seeking adjudication of the children under the Nebraska Juvenile Code and alleging that the children were at risk of harm because of the actions of Brett and Lisa, including domestic violence and consumption of alcohol. On the same day the petition was filed, the juvenile court entered an order placing the children in the custody of the Nebraska Department of Health and Human Services and stating that the placement of the children was not to include Brett's home.

In January 2010, Brett admitted to the allegations of the petition.

In February 2010, approximately 1 month after Brett entered his admission to the allegations in the petition, a disposition hearing was held. Brett was ordered to complete inpatient chemical dependency treatment and a domestic violence education program, and he was granted supervised visitation with the children.

In May 2010, another disposition hearing was held. By that time, Brett had completed inpatient chemical dependency treatment and had attended substance abuse group meetings daily for 3 months, and he had regularly submitted to drug testing which revealed he was not using controlled substances. Brett was actively participating in supervised visitation with the children.

In August 2010, another disposition hearing was held. At that time, the court ordered that the children could be transitioned back into Brett's home. All four children returned to Brett's home in September.

In December 2010, another disposition hearing was held. At that time, the court ordered Brett to complete a parenting education program and to continue to attend substance abuse group meetings. Shortly after the disposition hearing, the children were removed from Brett's home after the Department learned that Brett was consuming alcohol in the home.

After the children were removed from his home in December 2010, Brett was allowed only supervised visitation. Visitations were held once per week and were scheduled so that Brett visited with Jacob one week and with the triplets the next week; as a result, he saw each child only once every other week.

In February 2011, Brett enrolled in another substance abuse treatment program. He failed to successfully complete the program.

In April 2011, the State filed a motion to terminate Brett's parental rights. The State alleged that termination of parental rights was appropriate under a variety of sections of Neb. Rev. Stat. 43-292 (Cum. Supp. 2012), including continuous or repeated neglect under § 43-292(2); debauchery, habitual use of intoxicating liquor or narcotic drugs under § 43-292(4); and failure of reasonable efforts to preserve and reunify the family to correct the conditions leading to adjudication under § 43-292(6). The State also alleged that termination of Brett's parental rights was in the best interests of the children.

Prior to any hearing on the motion to terminate parental rights, Brett indicated to the Department that he wanted to relinquish his parental rights. As a result, the Department stopped providing visitation with the children in October 2011. However, Brett never finalized the relinquishment process and, in December 2011, he changed his mind and decided he wanted to resume his efforts toward reunification with the children. The Department did not reinstate his visitation.

In March 2012, a hearing on the motion to terminate Brett's parental rights began. At the start of the hearing, the State made comments about the children having been out of the home for at least 15 or more months of the most recent 22 months, and the court sought clarification about whether the State had made allegations under § 43-292(7) in the motion. The State then asked for leave to amend the motion to include allegations under § 43-292(7). Brett objected to the proposed amendment. The court granted the State's request for leave to amend, but also granted Brett a continuance.

In April 2012, the hearing resumed. At that hearing, as in the hearing which led to the present appeal, voluminous testimony and exhibits were presented to the court. After the hearing, the court entered an order terminating Brett's parental rights to the four children.

Brett appealed the termination order. In *In re Interest of Jacob H., supra*, Brett challenged the court's failure to recuse itself from the termination proceedings and the sufficiency of the evidence to support the finding of a statutory basis for termination of parental rights or that termination was in the best interests of the children.

In *In re Interest of Jacob H., supra*, we found no merit to Brett's assertion that the lower court erred by failing to recuse itself from the termination proceedings. Brett challenged the court's impartiality on the basis of the court having brought to the attention of the State that the motion for termination of parental rights had not included allegations under § 43-292(7). We found Brett's assertion to be meritless, finding that no reasonable person would have questioned the judge's impartiality.

We also found no merit to Brett's assertion that there had been insufficient evidence to support a finding that at least one statutory basis for termination of parental rights had been proven. We found that there was clear and convincing evidence that the children had been in an out-of-home placement for 18 of the most recent 22 months.

We found merit, however, to Brett's assertion that there had been insufficient evidence to support a finding that termination of his parental rights was in the best interests of the children. We recognized that the evidence adduced at that termination hearing had demonstrated that Brett had entered inpatient treatment to address substance abuse problems, had successfully completed

the program, and had gone on to maintain his sobriety. Brett had also begun seeing a new doctor who had helped Brett to better manage pain related to a severe back problem without abusing alcohol or controlled substances.

We also recognized that Brett's visitation with the children had gone well enough that less than 1 year after their removal from the home they were returned to Brett's home, and he was able to appropriately care for them for a period of time. Unfortunately, Brett then suffered a relapse and began to again consume alcohol to manage his pain. Once the children were again removed from the home, Brett's visitation was eventually terminated when he expressed an interest in relinquishing his parental rights and services were stopped.

Finally, we recognized that the evidence adduced had indicated that Brett had maintained his sobriety with no further relapses during the 16 months prior to the termination hearing and that he had maintained a stable residence and continued to express a desire to be reunited with his children.

We concluded that the evidence revealed that Brett had made strong efforts toward reunification with his children and made positive changes. Although we expressed concern about Brett's relapse after the children were returned to his care, we found that the evidence was not sufficient to demonstrate that termination was the last resort available. As such, we reversed the termination of his parental rights. Our opinion was issued in April 2013. *In re Interest of Jacob H., supra.*

In May 2013, partly based on events occurring while the prior appeal was pending, the State filed another motion to terminate Brett's parental rights. In the motion, the State alleged the same statutory grounds for termination as in the prior motion, and again alleged that termination was in the best interests of the children. A hearing was held on the motion in February 2014, at which time the court received the entirety of the proceedings from the previous termination hearing and received additional evidence related to the events occurring after the previous termination hearing.

The evidence adduced at the hearing indicated that in July or August 2012, within a couple of months of the first termination of his parental rights and while his appeal of that termination was pending, Brett began using methamphetamine. He also began selling methamphetamine. An undercover informant engaged in a series of controlled buys in October and November, during which he purchased a total of 12.29 grams of methamphetamine, all of which tested as being 95 percent purity or greater. As a result of the controlled buys, law enforcement secured and executed a search warrant in February 2013, during which they found over 49 grams of 95 percent pure methamphetamine and distribution-related items, including scales and baggies.

In February 2013, while the prior termination of his parental rights was still on appeal and before we issued our reversal therein, Brett was arrested for distribution of methamphetamine. Brett was indicted on federal charges. He was placed on federal pretrial release in June 2013.

While on federal pretrial release, Brett completed outpatient therapy, resumed treatment with a pain specialist, participated in substance abuse programs, volunteered with a church, and provided urinalyses.

Brett eventually entered a guilty plea to a federal charge of conspiracy to distribute methamphetamine. In May 2014, he was sentenced to 36 months in federal prison.

The State adduced evidence of a court-ordered psychological evaluation of Brett that had been completed in January 2014. That evaluation indicated that Brett suffers from attention deficit disorder and substance abuse disorders. It also indicated that Brett has narcissistic character traits that can cause him to disregard the needs of others and enable his drug seeking behavior. Finally, it noted a number of clinical risk factors regarding Brett's ability to parent, including his multiple prior incidents of substance abuse, his attention deficit disorder, his history with antisocial criminal peers, and his history of failed relationships.

Between December 2013 and May 2014, a licensed clinical psychologist conducted a visitation assessment. She conducted the evaluation to determine whether visitation or any contact should occur between Brett and the children. During that assessment, Brett indicated that he had been addicted to narcotics and alcohol for 15 years. During the course of interviews, all four children expressed a desire to cease contact with Brett; Jacob did not want to change his current placement, Madison stated that she wanted to be adopted, Megan expressed that she thought it would be dangerous to see Brett, and Morgan indicated that she considered her parents to be "drug people" and that she wanted them to be "fully recovered" before having contact again.

The clinical psychologist conducting the visitation assessment opined that it would be emotionally, physically, and psychologically harmful for the children to have contact with Brett and that contact between Brett and the children was not in the children's best interests.

The State also adduced evidence from a licensed mental health practitioner who had been working with the triplets since March 2011. He testified about improvement and progress made by the triplets in their therapy after contact with Brett had ended in October 2011 and he opined that they would regress if they had further contact with Brett. He opined that restarting contact with Brett would not be in the triplet's best interests. Similarly, a therapist treating Jacob opined that placing Jacob back into Brett's care was not in Jacob's best interests.

In June 2014, the juvenile court again entered an order terminating Brett's parental rights. In the order, the court found that all of the alleged statutory grounds for termination had been proven and that termination was in the best interests of the children. This appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Brett has assigned seven errors, which we consolidate for discussion to three. First, Brett asserts that the juvenile court violated his due process rights by again failing to recuse itself from the termination proceedings. Second, Brett asserts that the court erred in finding statutory grounds for termination of his parental rights. Third, Brett asserts that the court erred in finding sufficient evidence to demonstrate that he is unfit and that termination of his parental rights is in the best interests of the children.

## IV. DISCUSSION

### 1. Recusal

Brett first asserts that the juvenile court judge erred in not recusing himself upon Brett's motion for recusal. Brett argues that recusal was required because the judge had, in a prior termination proceeding, recommended to the State that it amend its motion for termination of parental rights to include a particular statutory ground and because the judge had presided over the prior proceeding. We find no merit to these assertions.

Under the Nebraska Revised Code of Judicial Conduct, a judge must recuse himself or herself if the judge's impartiality might reasonably be questioned. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). To demonstrate that a trial judge should have recused himself or herself, the moving party must demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown. *Id.* In addition, a party seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality. *Id.*

First, with respect to Brett's argument that the judge should have recused himself because he had "assisted the State at a critical stage in the first [termination of parental rights] proceeding when it allowed and suggested an amendment be made to the" motion filed by the State, we note that this exact issue was raised and resolved in Brett's prior appeal. In that appeal, he also alleged that the judge should have recused himself for this reason, and on appeal we specifically rejected that assertion. We found that Brett had not asked the judge to recuse himself and that the judge had not encouraged the State to amend its pleadings. We found that no reasonable person would have questioned the judge's impartiality in those proceedings. That conclusion is still true.

With respect to Brett's assertion that recusal was required because the judge had presided over the prior termination proceeding, we similarly find no merit. The fact that the judge presided over the entirety of the proceedings, including the prior termination of parental rights hearing and review hearings, is not a basis for disqualification in the absence of any indication that the judge's impartiality might reasonably be questioned. There remains no evidence to suggest that the judge's impartiality might be questioned.

Brett's argument that the judge's having presided in an adjudicatory capacity over "the entire proceedings in this case" prior to this termination hearing is a sufficient basis for disqualification would, if accurate, mean that a new judge would have to be assigned to preside over every hearing in the case--after all, once a judge presides over adjudication, or disposition, or a review hearing, or any other matter in the case, that judge would have presided over the matter in an adjudicatory capacity. Such is clearly not the case, and Brett cites to no cases from any jurisdiction that would support such a notion. We find no merit to this argument.

### 2. STATUTORY GROUNDS FOR TERMINATION

Brett next assigns in several assignments of error that the juvenile court erred in finding that termination of parental rights was appropriate under several of the statutory grounds alleged by the State. Brett has not, however, challenged the court's specific finding that the minor children have been in an out of home placement for at least 15 of the most recent 22 months, providing statutory grounds for termination under Neb. Rev. Stat. § 43-292(7). As such, we need not address Brett's assertions concerning other statutory grounds.

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in that section have been satisfied and that termination is in the child's best interests. See *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). The State must prove these facts by clear and convincing evidence. *Id.* Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *Id.*

- 6 -

In Brett's prior appeal from the court's first termination of his parental rights, he also challenged several of the statutory grounds for termination that the court had found had been proven. In the prior appeal, Brett also failed to challenge the finding that the minor children had been in an out-of-home placement for at least 15 of the most recent 22 months, providing a statutory basis for termination under § 43-292(7). In the prior appeal, we specifically pointed out that because Brett failed to challenge that statutory ground for termination, we did not need to address his challenges concerning the other statutory grounds.

In this appeal, Brett has again not raised a challenge to the court's conclusion that the minor children had been in an out-of-home placement for at least 15 of the most recent 22 months. In the current order terminating Brett's parental rights, the court found that the children had been in an out-of-home placement for more than 40 consecutive months. Brett's argument on appeal concerning this statutory ground is simply that termination under § 43-292(7) also requires a showing that termination is in the best interests of the children; we address the best interests argument below.

As we did in the previous appeal, we conclude that there is clear and convincing evidence that termination of Brett's parental rights is appropriate pursuant to § 43-292(7). As we did in the previous appeal, we decline to further address Brett's assertions about the other statutory grounds alleged and found to have been proven.

### 3. BEST INTERESTS

Finally, Brett asserts that the juvenile court erred in finding that termination of his parental rights was in the best interests of the children. He argues that the children were bonded to him before being removed from the home and that "[n]othing had changed" with regard to the children's best interests since our prior opinion. We find these assertions to be meritless.

A termination of parental rights is a final and complete severance of the child from the parent and removes the entire bundle of parental rights; therefore, given such severe and final consequences, parental rights should be terminated only in the absence of a reasonable alternative and as a last resort. See *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010). The law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *Id.*

At the time of our prior opinion, in which we reversed the lower court's finding that termination of parental rights was in the best interests of the children, we concluded that Brett had demonstrated progress, particularly with respect to his substance abuse problems and efforts toward reunification, and we concluded that a potentially isolated relapse of substance abuse should have prevented a conclusion that termination was then appropriate.

While the prior termination of Brett's parental rights was on appeal to this court and Brett was urging us to restore his parental rights, he began using and dealing methamphetamine. Brett testified that he regularly began using methamphetamine in July or August 2012. He got caught, arrested, and charged in federal court related to those activities. He entered a plea, was convicted, and was sentenced to a period of incarceration.

This is no longer a case of a single relapse in the midst of a parent's continued and substantial progress. This is now a situation where the minor children have been out of the home

for several years, have not had contact with Brett for the last couple of years, are all doing well in their new situations, and Brett has continued to demonstrate that he is not capable of engaging in the behaviors necessary to restore the family. As the juvenile court characterized it, Brett's "decision to enter into the commerce of illegal drugs showed a blatant disregard for the welfare of his children" and "call[ed] into serious question [his] ability to parent."

Moreover, as the juvenile court found, the record contains evidence related to the psychological and emotional impact of Brett's actions on the minor children. Expert evidence was adduced recommending that Brett have no form of visitation with the children and that any contact between Brett and the children would be emotionally and psychologically damaging to each of the children.

There is now sufficient evidence to support the conclusion that termination of Brett's parental rights is in the best interests of these children. We find no merit to Brett's assertions to the contrary. We affirm the juvenile court's termination of parental rights.

AFFIRMED.